**JOHN K. PARK, ESQ. (SBN 175212)**
**MARK L. SUTTON, ESQ. (SBN 120255)**
**park@parklaw.com**
 **3255 Wilshire Blvd., Suite 1110**
**Los Angeles, California 90010**
**Telephone: (213) 389-3777**
**Facsimile: (213) 389-3377**
Attorneys for Defendant,
ISPEAK[ER] CO., LTD
Verus U.S.A., LLC

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPIGEN KOREA CO., LTD, a Republic of Korea corporation,<br><br>    Plaintiff<br><br>    v.<br><br>ISPEAK CO., LTD., a Republic of Korea corporation; VERUS U.S.A., LLC, a California limited liability company ; and DOES 1 through 10, inclusive,<br><br>    Defendants<br>———————————————————<br>VERUS U.S.A., LLC, a California limited liability company,<br><br>    Counter-Plaintiff<br><br>    v.<br><br>SPIGEN KOREA CO., LTD, a Republic of Korea corporation,<br><br>    Counter-Defendant | CASE NO.: 8:15-CV-01050 DOC (DFMx)<br><br>MEMORANDUM AND POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS ISPEAK[ER] AND VERUS' MOTION FOR SUMMARY JUDGMENT<br><br>The Honorable David O. Carter<br><br>Dept:    9D<br><br>Hearing Date: June 13, 2016 at 08:30 a.m.<br><br>Trial Date: July 26, 2016 at 08:30 a.m. |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  NON-INFRINGEMENT .................................................................................... 1

    A.  PROPER CONSTRUCTIONS OF RELEVANT CLAIM LANGUAGE RE NON-INFRINGEMENT ......................................................................................... 3

        1.  The Relevant Claim Language Concerning Non-Infringement ........................ 3

        2.  Under the Patent Law, the Proper Construction of Claim 16 Includes a Requirement of "Grooves" as Part of the "Hard Protective Frame" ................. 4

            a. The "Grooves" in the Specification (Including the Claims) of Spigen 283 Are in the "Hard Protective Frame" ................................................ 4

            b. The Ordinary and Customary Meaning of "Grooves" Is a Long, Narrow Cut-Out or Indentation in Surface ........................................................ 5

            c. There Are No "Equivalents" of "Grooves" Under 35 U.S.C. § 112(f) ...................................................................................... 6

    B.  THE ACCUSED DEVICES DO NOT INFRINGE BECAUSE THEY DO NOT INCLUDE "GROOVES" THAT ARE PART OF THE "HARD PROTECTIVE FRAME" LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS ........... 7

        1.  There Is No Literal Infringement of Any of the Claims of Spigen 283 ............. 7

        2.  There Is No Doctrine of Equivalents Infringement of Spigen 283 ................. 10

            a. The "Way" in the Accused Devices Is Not Substantially the Same as the "Way" in the Claimed Invention in Two Respects .............................. 10

            b. The "Result" in the Accused Devices Is Not Substantially the Same as the "Result" in the Claimed Invention in Two Respects Also ............. 11

    C.  IN CONCLUSION, THERE IS NO LITERAL OR DOCTRINE OF EQUIVALENTS INFRINGEMENT OF INDEPENDENT CLAIMS 1 AND 16 AND THUS NO CLAIM OF SPIGEN 283 ......................................................................... 13

III. INVALIDITY UNDER 35 U.S.C. § 103 ......................................................... 13

A. THE LAW OF OBVIOUSNESS UNDER 35 U.S.C. § 103 ........................................ 13

    1. KSR Int'l Co. v. Teleflex Inc. (U.S. Supreme Court) ...................................... 13

    2. Relevant Federal Circuit Case Law Since KSR ............................................... 15

B. OBVIOUSNESS OF INDEPENDENT CLAIMS 1 AND 16 OF SPIGEN 283 .......... 17

    1. Overview of the Prior Art Regarding Claims 1 and 16 .................................... 17

    2. Claims 1 and 16 Are Obvious in View of KUM435, Spigen-1 and Mongan .. 18

    3. Claims 1 and 16 Are Obvious in View of KUM 435, Bau and Mongan ......... 20

    4. Claims 1 and 16 Are Obvious in View of KUM435 and Incipio .................... 21

    5. Claims 1 and 16 Are Obvious in View of Incipio and OtterBox .................... 22

C. CLAIMS 2-15 AND 17-22 ARE ALSO OBVIOUS UNDER 35 U.S.C. § 103 .......... 22

D. CLAIMS 15 AND 22 ARE INVALID UNDER 35 U.S.C. 112 FOR LACK OF WRITTEN DESCRIPTION ........................................................................................ 24

E. SECONDARY CONSIDERATIONS DO NOT SUPPORT NON-OBVIOUSNESS ......................................................................................................... 24

IV. CONCLUSION ................................................................................................................ 25

<u>**TABLE OF AUTHORITIES**</u>

**Cases**      **Page**

Acco Brands Corp. v. Fellowes, Inc., 813 F.3d 1361 (Fed. Cir. 2016) ......................................... 16

Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc., 261 F.3d 1329 (Fed. Cir. 2001) ....................................................................................................................................... 1

AKZO Nobel Coatings, Inc. v. DOW Chemical Co., 811 F.3d 1334 (Fed. Cir. 2016) ........... 2, 10

Conoco, Inc. v. Energy & Env. Int'l, L.C., 460 F.3d 1349 (Fed. Cir. 2006) ................................. 2

Dome Patent L.P. v. Lee, 799 F.3d 1372 (Fed. Cir. 2015) ........................................................... 1

Freedman Seating Co. v. Am. Seating Co., 420 F.3d 1350 (Fed. Cir. 2005) ............................... 2

Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605 (1950) ................................. 2

In re Icon Health and Fitness, Inc., 496 F.3d 1374 (Fed. Cir. 2007) ........................................... 15

KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398 (2007) .................................................. 13, 14, 16, 17

Leapfrog Enterprises, Inc. v. Fisher-Price, Inc., 485 F.3d 1157 (Fed. Cir. 2007) ....................... 15

Microsoft Corp. v. GeoTag, Inc., --- F.3d ---, 2016 WL 1274394 (Fed. Cir. 2016) ..................... 2

MobileMedia Ideas LLC v. Apple Inc., 780 F.3d 1159 (Fed. Cir. 2015) ...................................... 4

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) .......................................................... 2, 5

Randall Mfg. v. Rea, 733 F.3d 1355 (Fed. Cir. 2013) ................................................................. 15

Revolution Eyewear, MC v. Aspex Eyewear, Inc., 563 F.3d 1358 (Fed. Cir. 2009) ..................... 2

Ring & Pinion Service Inc. v. ARB Corp., 743 F.3d 831 (Fed. Cir. 2014) ............................. 2, 10

Rockwell Int'l Corp. v. U.S., 147 F.3d 1358 (Fed. Cir. 1998) ...................................................... 1

Terlep v. Brinkman Corp., 418 F.3d 1379 (Fed. Cir. 2005) ........................................................ 2

Trivascular, Inc. v. Samuels, 812 F.3d 1056 (Fed. Cir. 2016) ..................................................... 5

Trustees of Columbia University v. Symantec Corp., 811 F.3d 1359 (Fed. Cir. 2016) ................. 6

Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546 (Fed. Cir. 1989) ............................ 3, 9, 13

**Statutes**      **Page**

35 U.S.C. § 103 .......................................................................... 1, 13, 15, 16, 17, 22, 24

35 U.S.C. § 112(f) ................................................................................................ 4, 5, 6, 24

Fed. R. Civ. P. Rule 56(c) ................................................................................................ 1

## I. __INTRODUCTION__

In this case, the sole cause of action of Plaintiff Spigen Korea Co., LTD ("Plaintiff" or "Spigen") is that U.S. Patent No. 9,049,283 ("Spigen 283") is infringed by Defendants Verus U.S.A., LLC ("Verus") and ISpeak Co., LTD. ("ISpeak") (Verus and ISpeak are collectively referred to herein as "Defendants"). Spigen 283 is provided herewith as Exhibit 1.

By this motion, Defendants seek summary judgment against Spigen 283 on two independent grounds.  Summary judgment should be granted to Defendants here because:

 (1) no finder of fact could reasonably find that the accused products infringe any claim of the Spigen 283 patent; and

(2) all claims of the Spigen 283 patent are invalid under 35 U.S.C. § 103 as obvious to a person of ordinary skill in the art.

Summary judgment of infringement, invalidity and exceptional case is appropriate when "there is no genuine issue of material fact … and the moving party is entitled to judgment as a matter of law."  *Rockwell Int'l Corp. v. U.S.*, 147 F.3d 1358, 1361 (Fed. Cir. 1998); Fed. R. Civ. P. Rule 56(c).

Plaintiff Spigen bears the burden of proving infringement by a preponderance of the evidence.  *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 262 F.3d 1329, 1336 (Fed. Cir. 2001).

Defendants bear the burden of proving invalidity by clear and convincing evidence.  *Dome Patent L.P. v. Lee*, 799 F.3d 1372, 1378 (Fed. Cir. 2015).

## II. __NON-INFRINGEMENT__

Determining whether Defendants' cell phone holders infringe Spigen 283 requires a two step analysis:

**First,** disputed terms in the asserted patent claims should be construed to determine their scope and meaning.  *Freedman Seating Co. v. Am. Seating Co.*, 420

F.3d 1350, 1356 (Fed. Cir. 2005).  Claim construction can be performed as part of summary judgment proceedings.  *See, e.g., Conoco, Inc. v. Energy & Env. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006).

Proper claim construction analysis begins by considering the language of the claims themselves.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*).  Claims should be given their ordinary and customary meaning consistent with the specification and prosecution history, as that meaning would have been understood by a person of ordinary skill in the art at the time of the invention.  *Id.* at 1312-1313, 1315, 1317.

**Second,** the properly construed claims must then be compared to Defendants' accused products so as to determine whether there is infringement.  *Terlep v. Brinkman Corp.*, 418 F.3d 1379, 1381 (Fed. Cir. 2005).  If a single element of an asserted claim is absent from Defendants' accused products, both literally and under the doctrine of equivalents, there is no infringement.  *Id.* at 1385.  There is literal infringement only if every word of the claim at issue reads on the accused product(s).  *Microsoft Corp. v. Geo Tag, Inc.*, _ F.3d _, 2016 WL 1274394 at *6 (Fed. Cir. 2016); *Revolution Eyewear, MC v. Aspex Eyewear, Inc.*, 563 F.3d. 1358, 1369 (Fed. Cir. 2009).

Alternatively, if an element or elements of the claim are not literally found in the accused product, there can be infringement under the doctrine of equivalents if each such element performs substantially the same function in substantially the same way to achieve substantially the same result, as the claimed invention.  *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950); *Ring & Pinion Service Inc. v. ARB Corp.*, 743 F.3d 831, 835 (Fed. Cir. 2014).  However, if one or more of the three function-way-result elements is missing from the accused product(s) for any claim element, there is no doctrine of equivalents infringement and thus no patent infringement.  *See AKZO Nobel Coatings, Inc. v. DOW Chemical Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016).

In addition, if an independent claim is not infringed, then all claims that depend from that independent claim are not infringed.  *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

### A. <u>PROPER CONSTRUCTIONS OF RELEVANT CLAIM LANGUAGE RE NON-INFRINGEMENT</u>

As explained below, the only independent claims, namely Claims 1 and 16 (as well as dependent Claim 17), include a requirement for "grooves" that are part of the "hard protective frame."  Claim 1 explicitly requires the foregoing element.  Claim 16, as properly construed according to law, also requires "grooves" in the "hard protective frame," as explained below.

### 1. <u>The Relevant Claim Language Concerning Non-Infringement</u>

Claim 1 expressly requires that "the hard protective frame comprises <u>grooves</u>."  Exhibit 1 (Spigen 283), at column, lines 66-67 (emphasis added).  Claim 1 also requires that the "cover … includes rails adapted to mate with and to be slidably mounted on the <u>grooves</u> so that the cover slides along the <u>grooves</u> to open and close the storage compartment."  Exihibit 1 (Spigen 283), at col. 7, lines 1-4 (emphasis added).

Claim 16 includes a "sliding means for sliding the cover forward and backward with respect to the hard protective frame."  Ex. 1 (Spigen 283), at col. 8, lines 26-27 (emphasis added).  As explained below, under the patent law, the "sliding means" of Claim 16 requires "grooves" as part of the "hard protective frame."

If an independent claim is not infringed, then all claims that depend from that independent claim are not infringed. <u>*See Wahpeton Canvas Co. v. Frontier, Inc.*</u>, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).  The remaining claims of Spigen 283 (Claims 2-15 and 17-22) are not infringed if independent Claims 1 and 16 are not infringed.  *Id.* at 1552 n.9.

**2.  Under the Patent Law, the Proper Construction of Claim 16 Includes a Requirement of "Grooves" as Part of the "Hard Protective Frame"**

Claim 16 includes "means-plus-function" language that, according to the patent statutes, requires certain claim construction analysis.  Specifically, Claim 16's "sliding means" clause set forth above "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112(f) (emphasis added); *see also MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1169 (Fed. Cir. 2015).

As explained below, the <u>only</u> "corresponding structure, material or acts," as required by section § 112(f), that are described in Spigen 283 for the "sliding means" clause are "grooves" in the "hard protective frame" and "rails" on the "cover" that slide in the "grooves."  Only the "grooves" in the "hard protective frame" and equivalents thereof, if any, are relevant to the non-infringement issues raised on this motion concerning Claim 16 (or Claim 1).  The "rails" on the "cover" are not relevant to this motion.

**a.  The "Grooves" in the Specification (Including the Claims) of Spigen 283 Are in the "Hard Protective Frame"**

The only "sliding means" that is disclosed in Spigen 283 (Ex. 1) has <u>"grooves" in the "hard protective frame."</u>  *See* FIGS. 5A, 6, 8A and 11 in Spigen 283 that are depicted as cut-out grooves (at "70") in the hard protective frame (at "30"); *see also* the written description of Spigen 283 at col. 3, lines 50-52 ("The hard protective frame 30 … includes grooves 70"); col. 4, lines 53-55 ("the grooves are formed on opposite side walls 31 of the hard protective frame 30"); col. 4, lines 63-64 ("grooves 70 of the hard protective frame 30"); and col. 6, lines 16-17 ("a pair of

grooves 70 on the hard protective frame 30").  There are no alternatives to "grooves" in the "hard protective frame" in Spigen 283.

Furthermore, Claim 1 specifically states that "the hard protective frame comprises grooves." [Spigen 283 at col. 6, lines 66-67]  Claim 1 also claims "a cover which includes rails adapted to mate with and to be slidably mounted on the grooves so that the cover sides along the groove to open and close the storage compartment." [Spigen 283 at col. 7, lines 1-4] Finally, Claim 17 provides that the "sliding means" of Claim 16 is limited in Claim 17 to "a pair of grooves formed on the hard protective frame and a pair of rails formed on the cover wherein the rails are configured to mate with and to be slidably mounted on the grooves."  [Spigen 283 at col. 8, lines 29-32.]

In view of the foregoing, the disclosures (i.e., embodiments) of "sliding means" in Spigen 283 exclusively describe "grooves" in the "hard protective frame."  There are no alternative disclosures in Spigen 283 corresponding to the "sliding means for sliding the cover forward and backward with respect to the hard protective frame," as required by Claim 16.  *See* Spigen 283, at col. 8, lines 26-27.  Therefore, section § 112(f) limits the only relevant "sliding means" to "grooves" in the "hard protective frame" and their equivalents, if any.

### b.  The Ordinary and Customary Meaning of "Grooves" Is a Long, Narrow Cut-Out or Indentation in a Surface

The next step is to determine what is included in the "ordinary and customary meaning" of the term "grooves" in light of the specification, including the claims, of Spigen 283.  *See Phillips, supra,* 415 F.3d at 1312-13, 1315 and 1317.  The specification of Spigen 283 does not define the term "grooves" either explicitly or impliedly and so extrinsic evidence regarding the meaning of "grooves" may be considered.  Dictionary definitions of a claim term are appropriately used by the courts for that purpose.  *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1062-63 (Fed.

Cir. 2016); *Trustees of Columbia University v. Symantec Corp.*, 811 F.3d 1359, 1362-63 (Fed. Cir. 2016).

In the present context, dictionary definitions define "groove" as "a long, narrow, hollow space cut into a surface. *See* Exhibit 28A, 28B (e.g., (i) Cambridge English Dictionary (Online): "a long, narrow, hollow space cut into a surface", (ii) Oxford Dictionaries (Online): " A long, narrow cut or depression, especially one made to guide motion or receive a corresponding ridge", (iii) Merriam – Webster Dictionary (Online): " a long narrow cut or low area in a surface " and (iv) The Free Dictionary (Online): "a long, narrow furrow or channel".)

### c.   There Are No "Equivalents" of "Grooves" Under 35 U.S.C. § 112(f)

As for "equivalents" under 35 U.S.C. § 112(f), there are no equivalents to the cut-out and indentation "grooves" disclosed and claimed in Spigen 283 in the field of art for this invention.  Seil Declaration, ¶ 14.   Therefore, the only "sliding means" in Claim 16 requires either cut-out or indentation-type "grooves" in the "hard protective frame."

In conclusion, under the proper constructions of the relevant language in Claims 1 and 16, both of those claims require "grooves" that are part of the "hard protective frame."

/ / /

/ / /

/ / /

### B.  THE ACCUSED DEVICES DO NOT INFRINGE BECAUSE THEY DO NOT INCLUDE "GROOVES" THAT ARE PART OF THE "HARD PROTECTIVE FRAME"

#### 1.  There Is No Literal Infringement of Any of the Claims of Spigen 283

In the accused products, the elements of the alleged "hard protective frame" that receive the sliding cover for the card storage compartment are step structures, not grooves.  *See* Exhibits 17 through 25 (the accused products).  A photo showing the step structure in one of the accused products is provided below:



Each step structure of the alleged hard protective frame in the accused structures has only two sides that are approximately perpendicular to one another.  The two step structures are not cuts in a surface or indentations in a surface, as required for the "grooves" of the claimed invention.  *See* Exhibit 28 for dictionary definitions of "groove."

A cut in a surface pierces through the material of the surface.   An example of a cut-out groove is depicted below:



An indentation groove provides a recess in a surface that essentially has three sides, two sides that are opposite one another and a bottom portion joining the two opposite sides.  Indentation grooves are depicted below:



On the other hand, an example of a step structure is depicted below:



The step structures of the alleged hard protective frame in the accused devices (see, e.g., photo above at the beginning of this subsection) do not pierce through the hard plastic material of the "hard protective frame" (i.e., are not cut-out "grooves") and do not have not three sides but instead only two (i.e., are not indentation "grooves"). *See* Exs. 19 through 27 (samples of the accused products); see also Exhibit 17, page 3 for a list of the accused products of Defendants in Plaintiff's infringement contentions.  In addition, the two sides of a step structure are approximately perpendicular to each other, not opposite to one another as required for two of the sides in indentation "grooves."  In view of the forgoing, there are no literal "grooves" in the alleged "hard protective frame" of the accused devices, thereby negating literal infringement.

There is an additional basis for the absence of literal infringement by the accused devices.  There are portions of the accused devices that participate with the step structures in the alleged "hard protective frame" to provide the sliding mechanism for the sliding cover in the accused devices.   Those additional portions are located in the alleged "soft protective case" and will be referred to as the 'soft ridges.'  The soft ridges are the part in the alleged "soft protective case" of the accused products that has sliding contact with the alleged "cover."  The soft ridges are shown below:



The soft ridges do not line up with the "step structure" in the alleged "hard protective frame" to form an arguably groove-like structure in a combination of the step structures and the soft ridges because the soft ridges are <u>offset</u> from the step structure. *See* Exhibit 29; Exhibits 19 through 27.  A simplified depiction of the offset (Park Dec. ¶32) is shown below:



There is thus no literal infringement of Claim 1 or Claim 16, for this additional reason.  Since Claims 1 and 16 are the only independent claims of Spigen 283, ALL of the dependent claims are also not literally infringed.  *Wahpeton*, 870 F.2d at 1552 n.9.

## 2. There Is No Doctrine of Equivalents Infringement of Spigen 283

In order to infringe under the doctrine of equivalents, the combined step structures and soft ridges have to perform substantially the same <u>function</u> in substantially the same <u>way</u> to achieve substantially the same <u>result</u> as the claimed "grooves" in the "hard protective frame" of the claimed device. *AKZO Nobel Coatings, Inc.*, 811 F.3d at 1342; *Ring & Pinion Service Inc.*, 743 F.3d at 835. Here, the "way" and "result" are not substantially the same in the accused devices for the reasons explained below.

### a. The "Way" in the Accused Devices Is Not Substantially the Same as the "Way" in the Claimed Invention in Two Respects

The soft ridges (one near each upper and lower edge of the sliding cover), in combination with the step structure, provide a sliding function in <u>two</u> "ways" that are not substantially the same as the claimed invention. First, the soft ridges are <u>part of the alleged "soft protective case</u>," not the alleged "hard protective frame." That different "way" is contrary to all of the claims because they all require that the "grooves" be in the "hard protective frame," as explained above in section II.A.2.a. Although not necessary to establish a "way" that is not substantially the same, this "way" in the accused products requires precise molding of two independently molded pieces because the accused devices require two different parts to come together to provide part of the sliding function when assembled. Seil declaration, ¶ 15.

Secondly, as explained in section III.B.1 above, when the accused "hard protective frame" is mounted on the alleged "soft protective case," the soft ridge is not located opposite any side of the step structure; instead, the soft ridge is <u>offset</u> from the step structure.

On the other hand, as explained above, in an indentation "groove" structure, there are two sides that are <u>opposite</u> each other and another side that joins the two opposite sides.  In a cut-out "groove" structure, there is merely an opening in a surface for sliding the "cover."  The accused devices do not have the structure or the features of either an indentation "groove" or a cut-out "groove" but instead provide a sliding function in a "way" that is not substantially the same as the claimed invention.  There is no doctrine of equivalents infringement.

> b. **The "Result" in the Accused Devices Is Not Substantially the Same as the "Result" in the Claimed Invention in Two Respects Also**

In addition, the accused devices provide a "result" that is not substantially the same as the claimed invention in two fashions.  First, having the entire "groove" structure in the alleged "hard protective frame" provides a sliding function that is easier and smoother because the hard material of the claimed "hard protective frame" is substantially more slippery, Ex. 49 (Spigen's Slim Armor CS for Galaxy S5 – made according to the '283 patent, Ex 50, pp3-4) than the soft material of the alleged "soft protective case" in the accused products.  Because the soft ridge of the alleged "soft protective case" provides a portion of the sliding structure in the accused devices, the resistance of the soft material causes the sliding function to be less effective.

The second "result" of the accused devices, that is not substantially the same as the "result" in the claimed invention, relates to a feature of the claimed invention in <u>all</u> claims of Spigen 283.  That feature is that the "hard protective frame" is "configured to removably mount over the soft protective case."  *See* Spigen 283 at col. 6, lines 65-66 (in Claim 1) and col. 8, lines 17-18 (in Claim 16).  Since the soft ridges are in the alleged "soft protective case," the soft ridges are removed from their assembled position when the alleged "hard protective frame" is removed from

the alleged "soft protective case."  When removal occurs, the alleged "cover" is no longer securely held in the position needed for the alleged "cover" to perform its sliding function because the step structure in the alleged "hard protective frame" has only two sides. The foregoing makes it difficult to put the alleged "cover" back into its proper position to perform the sliding function when the alleged "hard protective frame" is re-mounted onto the alleged "soft protective case."  *See* Seil Declaration ¶ 16.

On the other hand, in the claimed invention, the "groove" is entirely in the "hard protective frame" so the removal of the "hard protective frame" from the "soft protective case" has no effect on the way the "cover" is mounted in the "groove."  In fact, one of the features of the only disclosed embodiment of the sliding cover and hard protective frame combination in Spigen 283, as it pertains to the "groove" structures, is that the "hard protective frame" is <u>locked onto the sliding "cover"</u> <u>"without being dislodged</u>:"

> "Preferably, the hard protective frame 30 and the cover 40 have three types of <u>locking mechanisms:  the grooves 70 and the rails 80 on opposite sides</u>, the locking protrusion 37 and the locking recess 47 on the top, and the cavity 39 and the mating protrusion 49 on the bottom. Because of these locking mechanisms, the cover 40 can securely close the storage compartment 60 and <u>slide forward and backward</u> with respect to the hard protective frame 30 **<u>without being dislodged</u>**." [Spigen 283 at column 5, lines 41-48] [emphasis added]

In the accused products, the alleged "cover" is likely dislodged from the alleged "hard protective frame" upon removal of the alleged "soft protective case." Thus, the "result" of the alleged "grooves" in the accused products is not substantially the same as the "result" of the "grooves" in the claimed invention according to the explicit disclosures of Spigen 283.

## C. **IN CONCLUSION, THERE IS NO LITERAL OR DOCTRINE OF EQUIVALENTS INFRINGEMENT OF INDEPENDENT CLAIMS 1 AND 16 AND THUS NO INFRINGEMENT OF ANY CLAIM OF SPIGEN 283**

In view of the foregoing, Defendants have not infringed Claims 1 and 16 of Spigen 283 because there is no literal or doctrine of equivalents infringement. Since all of the dependent claims include all of the limitations of either Claim 1 or Claim 16 (i.e., all dependent claims of Spigen 283 depend on one of Claims 1 and 16), Defendants are entitled to a judgment of non-infringement of <u>all</u> claims of Spigen 283. *See Wahpeton Canvas Co.,* 870 F.2d at 1552 n.9.

## III. **INVALIDITY UNDER 35 U.S.C. § 103**

All of the claims of Spigen 283 are invalid under 35 U.S.C. § 103 which states as follows:

> "A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the **differences between the claimed invention and the prior art** are such that the claimed invention as a whole would have been **obvious** before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made." [emphasis added]

### A. **THE LAW OF OBVIOUSNESS UNDER 35 U.S.C. 103**

#### 1. *KSR Int'l Co. v. Teleflex Inc.* **(U.S. Supreme Court)**

In 2007, the U.S. Supreme Court issued a decision regarding invalidity under 35 U.S.C. § 103 that changed the way that obviousness under 35 U.S.C. § 103 is analyzed. In *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S.Ct. 1727 (2007), the

U.S. Supreme Court reversed a determination of non-obviousness (under 35 U.S.C. § 103) by the Court of Appeals for the Federal Circuit; the alleged invention in that case was "a mechanism for combining an electronic sensor with an adjustable automobile pedal so the pedal's position can be transmitted to a computer that controls the throttle in the vehicle's engine." *KSR*, 550 U.S. at 405.  In so doing, the Supreme Court reversed the Federal Circuit's then-established obviousness analysis that used a "rigid approach" of the requirement of a "teaching, suggestion or motivation" in the prior art for combining pre-existing elements. *Id*. at 415.

The Court emphasized "the need for caution in granting a patent based on the combination of elements found in the prior art," citing the Supreme Court's prior admonition "that a 'patent for a combination which only unites <u>old elements with no change in their respective functions</u> … obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men." *Id*. at 416 (citing *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152 (1950)) (emphasis added).

The Supreme Court determined that the foregoing admonition is the "principle reason" that "[the] <u>combination of familiar elements</u> according to known methods is likely to be obvious when it does no more than yield <u>predictable results</u>." *Id*. at 416 (emphasis added).  In concluding its discussion of the legal principles of obviousness, the Supreme Court stated that:

> "When there is a design need … to solve a problem and there are a finite number of <u>identified, predictable solutions,</u> a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is <u>likely the product not of innovation but of ordinary skill and common sense</u>."

*Id*. at 421 (emphasis added).

## 2.  <u>Relevant Federal Circuit Case Law Since *KSR*</u>

Since the *KSR* decision, the Federal Circuit has repeatedly found obvious combinations of prior art elements that provided the same function in the claimed invention as they did in the prior art.  Following are a few illustrative examples of Federal Circuit case law applying *KSR*.

In *In re Icon Health and Fitness, Inc.*, 496 F.3d 1374 (Fed. Cir. 2007), the invention was a folding treadmill that used a gas spring to hold it in its folded position.  One prior art patent disclosed a folding treadmill and another prior art patent disclosed a gas spring for a folding bed that held the bed in its folded position.  After citing *KSR*, the Federal Circuit held the claimed invention was obvious under 35 U.S.C. § 103 while stating that "[o]ne skilled in the art would naturally look to prior art addressing the same problem at hand, and in this case would find an appropriate solution."  *Id.* at 1380.

In *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157 (Fed. Cir. 2007), the invention was an auditory learning device for helping young children to read phonetically.  A prior art patent disclosed an "electro-mechanical" auditory learning toy providing the same operational functions but without the modern electronic elements used in the invention.  *Id.* at 1161.  Another prior art learning toy product with "a slightly different mode of operation" used all but one of the claimed electronic elements, a "reader."  *Id.* at 1161-62.  The "reader" element, however, was found to be "well-known in the art at the time of the invention."  *Id.* at 1162.  The Federal Circuit affirmed the district court's finding of obviousness, citing *KSR*'s principle of the likely obviousness of "familiar elements" that "yield predictable results."  *Id.* at 1161 and 1163.

*Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013) related to an invention for moveable bulkheads for partitioning cargo space designed to be lifted and stowed near the ceilings of shipping containers.  The Federal Circuit vacated the U.S. Patent Office's Patent Trial and Appeal Board's  determination that the invention was non-

obvious in view of four prior art references.  The Court overturned the decision below because the Board did not consider extensive background prior art references (beyond the four cited references) showing that a "prevalent … method of stowing a bulkhead panel was to raise it to the ceiling." *Id.* at 1363.  The Court admonished the Board for ignoring evidence that the design of the claimed invention was "nothing more than the 'combination of familiar elements according to known methods' … [and] 'performing the same function it had been known to perform,' " citing and quoting *KSR*.  *Id* (internal quotations omitted).

*Acco Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361 (Fed. Cir. 2016) involved an invention for a paper shredder that had a controller, thickness detector and presence detector combination.  The claimed shredder required detection and recordation of the appropriate thickness of the paper and the presence of the paper in the paper feeder, in that order, before the controller turned on the shredder when the appropriate parameters were present.  *Id*, at 1367.  All three elements and their functions were present in the prior art but no prior art device had determined an appropriate thickness of the paper <u>before</u> the presence sensor was allowed to activate the shredder.  *Id*, at 1366-67.  The Federal Circuit reversed the U.S. Patent Trial and Appeal Board's determination that the patent examiner had inappropriately found a prima facie case of obviousness of the claimed invention under 35 U.S.C. § 103, citing *KSR*.  *Id*, at 1367-68.

The claims of Spigen 283 are "old elements [found in the prior art] with no change in their respective functions," and are thus "predictable solutions" that would be obvious to a person of ordinary skill in the art under 35 U.S.C. § 103.  *See KSR*, 550 U.S. at 416.  Therefore, Defendants respectfully submit that all of the claims of Spigen 283 should be declared obvious and thus invalid under 35 U.S.C. § 103, in view of each of the combinations of prior art discussed below.

## B. OBVIOUSNESS OF INDEPENDENT CLAIMS 1 AND 16 OF SPIGEN 283

### 1. Overview of the Prior Art Regarding Claims 1 and 16

All of the elements of the only independent claims in Spigen 283, Claims 1 and 16, are found in the prior art.  The functions of each of the elements of Claims 1 and 16 are identical to the functions of those same elements found in the prior art cited herein.  Therefore, Claims 1 and 16 merely claim combinations of "old elements with no change in their respective functions" thereby yielding "predictable results," and as such are obvious under 35 U.S.C. § 103.  *See KSR*, 550 U.S. at 416.

ALL of the items of prior art presented on this motion are in the field of art for the claimed invention in Spigen 283, namely protective carrying cases for electronic devices such as cell phones.  Park Dec. ¶33. Therefore, the prior art presented on this motion is not only within an "analogous" field of art, it is in the <u>identical</u> field of art as the present invention. Park Dec. ¶33.

The items below are prior art to Spigen 283 as indicated by the evidence cited with those items below and the dates of public disclosures on the patent documents that are listed below that are authentic by stipulation among the parties, Ex 46, Park Dec. ¶¶29-30 (whether U.S. or foreign patent documents).

  (i)   Korean Registered Utility Model 20-0472435 ("KUM435") (*See* Exhibits 30 and 31) Ex 48, p8 (RFA Response #2), [By Stipulation - Ex 46, Park Dec. ¶30];

  (ii)  Plaintiff Spigen's "Slim Armor" prior art cell phone carrier ("Spigen-1") (See Exhibit 33) Ex 47, pp4-5 (Depo Trans of DY Kim, pp13-14);

  (iii)  U.S. Patent Publication No. 2012/0067751 to Mongan et al. ("Mongan") (See Exhibit 34) [By Stipulation – Ex 46, Park Dec. ¶29];

  (iv)  Third party Incipio's "Stowaway Credit Card Case" product ("Incipio") (See Exhibit 38) Ex 41 – Jay Yu Dec. ¶8; ; Ex 45 – Seil Dec. ¶13.

(v)     U.S. Patent No. 8,245,842 to Bau ("Bau") (See Exhibit36) [By Stipulation - Ex 46, Park Dec. ¶29];

(vi)    Third party OtterBox's "Commuter Series Wallet" product ("OtterBox") (See Exhibit 39), Ex 41 – Jay Yu Dec. ¶7; Ex 45 – Seil Dec. ¶12.

(vii)   DAMDA Cotton case for Galaxy S5. ("DAMDA") (*See* Exhibit 44) Ex 41 – Jay Yu Dec. ¶12;

(viii)   DESIGNSKIN for iPhone 5/5S ("DESIGNSKIN-1") (*See* Exhibit 42) Ex 41 – Jay Yu Dec ¶10; Park Dec. ¶24; and

(ix)    U.S. Patent No. 8,439,191 to Lu (" '191 Patent") (Exhibit 5) [By Stipulation – Ex 46, Park Dec. ¶29];

## 2. Claims 1 and 16 Are Obvious in View of KUM435, Spigen-1 and Mongan

As Spigen effectively admitted in the briefing on the F.R.Civ.P. 11 motion earlier in the case, KUM435 discloses all elements of Claims 1 and 16 except (allegedly) (i) the "removably" limitation concerning the "mount[ing]" of the "hard protective frame" on the "soft protective case" in both Claims 1 and 16 and (ii) the "raised wall formed on a bottom surface of the back panel [of the 'soft protective case'] to form the storage compartment" included in Claim 1 (but not Claim 16).

While Defendants admit that the "removably" limitation is not disclosed in KUM435, Defendants contend that the limitation regarding the "raised wall" from the "back panel" of the "soft protective case" is disclosed in KUM435, in view of the disclosures provided in the invalidity claim chart provided as Exhibit 32 (next to the "raised wall" limitation from Claim 1 of the patent in suit, Spigen 283).  In any event, Mongan discloses the "raised wall" features in the combination presented here.

Prior art product, Spigen-1, discloses the "removab[ility]" of the hard protective frame from the soft protective case, as the CEO of Spigen, Mr. D. Y. Kim admitted at his deposition.  *See* Ex.47, at pp11, 14-15; *see also* Ex. 33 (Spigen-1 product sample).  Mr. D. Y. Kim also admitted at his deposition that Spigen-1 was sold to others by his company before the priority date of the Spigen 283 patent, June 16, 2014, thereby making it prior art to Spigen 283.  *See* Ex.47, at pp 6-7.

As mentioned above, the Mongan prior art patent publication discloses a "raised wall" from the "back panel" of a "soft protective case" to form a storage compartment.  *See*  Ex. 34.  Figs. 2A and 2B of the Mongan patent shown below depict a "flexible inner layer insert 125" and an "exterior hard layer 110."



FIG. 2A                                    FIG. 2B

Referring to the drawings above and the description at "[0033]" of Mongan (Ex. 34), there is a raised wall extending from the "flexible inner layer insert" at "125" in both FIGS. 2A and 2B.  The raised wall is formed on the bottom surface of the back panel of the "flexible inner layer insert 125" (which receives a "personal electronic device" "170"), as also shown in FIGS. 2A and 2B and described at "[0032]" and "[0033]."  The raised wall at "125" forms a "first fitted cavity" at "160," as shown in FIG. 2A and described at "[0033]."  The "first fitted cavity" is designed for receipt of a "card 180," as shown in FIG. 2B and described at "[0033]."

In view of the foregoing, KUM435, Spigen-1 and Mongan, together, have all elements of Claims 1 and 16 with each of those prior art elements performing the same functions in the combination as they performed in their separate prior art

embodiments.  Specifically, the "removab[ility]" function in Spigen-1 is provided
for a hard protective frame from a soft protective case for a cell phone case, just as it
is in the Spigen 283 patent.  Ex. 47 at pp3-5 (deposition transcript of D.Y. Kim).
Moreover, Mongan's "raised wall" from the panel of the flexible insert provides the
same function as the "raised wall" in Spigen 283, namely to form the card storage
compartment.  The claimed invention provides no more functions, advantages or
any other result than a person of ordinary skill in the art would expect from the
combination of the prior art (i.e., has "predictable results").  Therefore, in view of
the *KSR* obviousness standards, combining KUM 435 with Spigen-1 and Mongan
renders Claims 1 and 16 obvious to a person of ordinary skill.  Seil declaration, ¶18.

It should be noted that Spigen was accused of infringing KUM435 before
applying for the Spigen 283 patent, Ex 48 p9, as shown by the evidence in
Defendants' pending F.R.Civ.P. 11 motion, Docket #21 and #23.  Of course, Spigen
also knew about its own prior art product, Spigen-1, before filing its application for
Spigen 283.  Ex. 47 at pp6-7.  However, Spigen did NOT disclose either KUM435
or Spigen-1 to the U.S. Patent and Trademark Office at any time.  *See* Exs. 1 and 2.
Of course, the examiner in the Spigen 283 patent application found the Mongan
reference himself.  *See* Ex. 1 under "(56) References Cited" on page 1 of Spigen
283.Therefore, the examiner would have had a very strong basis for rejecting the
claims of Spigen 283 if Spigen had fulfilled its duty of candor before the USPTO.
Instead, the examiner issued Spigen 283 without ANY objection whatsoever
because the relevant prior art was not known.  *See* Ex.  2 (file history of Spigen
283).

### 3.  Claims 1 and 16 Are Obvious in View of KUM435, Bau and Mongan

The analysis concerning the obviousness of this combination is essentially the
same as for the KUM435, Spigen-1 and Mongan combination in the previous

section, except the the Bau patent replaces Spigen-1.  The Bau prior art discloses the "removab[ility]" of a "hard protective frame" from a "soft protective case" among other elements of the dependent claims of Spigen 283, as does Spigein-1.  *See* Ex. 36 (the Bau patent) and Ex. 37 (a chart identifying the disclosures in Bau, including but not limited to "removab[ility]," that are claimed in Claim 1).  The *KSR* principles regarding obvious combinations apply for the same reasons that they applied in the previous section of this brief.  All of the elements of both Claim 1 and Claim 16 are found in the prior art here that provide precisely the same function as found in the combination.  Ex 45 - Seil declaration, at ¶19.

### 4.  **Claims 1 and 16 Are Obvious in View of KUM435 and Incipio**

The Incipio device (Ex. 38, Dec. Jay Yu ¶8) discloses, among other claimed elements, a cell phone carrying case with a soft protective case for gripping the cell phone plus a "hard protective frame" <u>removably</u> mounted on a "soft protective case."  Incipio also discloses a "raised wall" from the "soft protective case" to form a storage compartment for credit cards on the "back panel" of the soft protective case that carries the cell phone.  *See* Ex. 38.

The remaining elements of Claims 1 and 16 of Spigen 283 are found in KUM435 either uniquely or duplicatively with Incipio.  *See* Exs. 31 and 32.

Therefore, KUM435 and Incipio, together, have all elements of Claims 1 and 16 with each of those prior art elements performing the same functions in the combination as they performed in their separate prior art embodiments. The combination provides no more functions, advantages or any other result than a person of ordinary skill in the art would expect from the combination (i.e., has "predictable results").  In conclusion, the combination of KUM435 and Incipio render Claims 1 and 16 obvious to a person of ordinary skill in the art under the *KSR* standards.  *See* Ex 45 - Seil declaration, ¶ 20.

### 5. Claims 1 and 16 Are Obvious in View of Incipio and OtterBox

Incipio (Ex. 38) provides almost all of the elements of Claims 1 and 16, including the soft protective case, the hard protective frame that is removable from the soft case, a storage compartment for credit cards, and a cover for the storage compartment that is mounted on the hard protective case.  The only claim elements missing from Incipio are those concerning the sliding features (i.e., "grooves" and "rails") in the hard protective frame and the cover.  Instead, Incipio's cover is rotatably hinged onto the hard protective case.

OtterBox (Ex. 39, Dec. Ex 41 - Jay Yu Dec. ¶7, Ex 45 – Seil Dec. ¶12) discloses a cover for a card storage compartment in a cell phone carrier.  The cover slides by means of two grooves in the hard protective frame and two rails in the cover that slide in the grooves to provide the cover's sliding function.

Incipio and OtterBox, together, have all elements of Claims 1 and 16 with each of those prior art elements performing the same functions in the combination as they performed in their separate embodiments.  The combination provides no more functions, advantages or any other result than a person of ordinary skill in the art would expect from the combination (i.e., has "predictable results").  Combining Incipio and OtterBox renders Claims 1 and 16 obvious to a person of ordinary skill in the art.  Ex 45 – Seil Dec. ¶ 21.

### C. CLAIMS 2-15 AND 17-22 ARE ALSO OBVIOUS UNDER 35 U.S.C. § 103

All of the alleged dependent claims of Spigen 283 (i.e., **Claims 2 through 15 and Claims 17 through 22, except for the not alleged Claims 7, 9 and 21**) are invalid as obvious under 35 U.S.C. § 103 in view of any of the four combinations of prior art set forth above in sections III.B.2 through 5 and further combined with the prior art items designated for each dependent claim in Exhibit 40.  *See* Ex 45 – Seil Dec., ¶ 22.  (Because Plaintiff does not assert Claims 7, 9 and 21, although these

claims are also obvious under 35 U.S.C. § 103 based on prior art available, Defendants do not provide arguments against unasserted claims.)

As a separate ground for obviousness of dependent **Claims 3 and 19** of Spigen 283, those claims are also obvious to a person of ordinary skill in the art in view of each of the combinations of prior art set forth above that include KUM435, namely the combinations in sections III.B.2, 3 or 4, combined with additional prior art disclosures of Bau, where Bau is not already included in the combination above. The additional prior art disclosures of Bau include those found at FIGS. 1, 3, 12 and 19 and column 4, lines 5-7, 44-48 and 59-65 of Bau.  In short, the "hard frame 16" and the "soft cover piece" (or "glove") "14" of Bau [*see* Bau at 4:5-7] disclose the claim elements of Claims 3 and 19.  For example, the "soft cover piece" "14" is explicitly stated in Bau to have "<u>indentations</u>" that "snugly receive[ ] the <u>complementary</u> shaped exoskeleton frame 16."  Although unnecessary, these portions of Bau use the <u>same terminology</u> used in Claims 3 and 19 of Spigen 283. [*See* Bau at 4:44-48 (emphasis added)]  Ex 45 – Seil Dec., ¶ 23.

Further, **Claim 18** of Spigen 283 is invalid in view of KUM435 alone or any of the four combinations of prior art provided above in conjunction with Claims 1 and 16, without any additional prior art.  The reasons for my opinion regarding Claim 18 are summarized in the paragraphs above concerning Claim 16, with the additional analysis in the following paragraph.

"Diagram 2" in KUM435 shows an aperture in the "2nd body 102" at "110" in Diagram 2 to provide a card storage compartment.  "Diagram 4" of KUM435 shows what are described as "walls" at "112" that are shown in Diagram 2 to entirely surround the aperture.  As explained above in the analysis of sections III.B 2 through 5, it is obvious to have that wall for the card storage to be a part of, and to extend upward from, the soft protective case (i.e., the "1st body"), instead of the hard protective frame (i.e., the "2nd body").  That is especially true in view of KUM435's

alternative embodiment, not discussed in connection with the diagrams, that the "1st body" (i.e, the <u>soft</u> protective case of KUM435) can provide a "floor" for the storage compartment, as well as other broad language of KUM435 cited in Exhibit 32 regarding the "raised wall" limitation of Claim 1 of Spigen 283.  *See* Exhibit 32 related to the "raised wall" limitation; *see also* Ex 45 – Seil Dec., ¶¶ 24-25.

Alternatively regarding **Claim 18**, Designskin-1 (Exhibit 42) and Designskin-2 (Exhibit 43) clearly show a hard raised wall surrounding the entire card storage space.  It is my opinion that those items of prior art, combined with the others analyzed above that disclose a <u>soft</u> "raised wall" to form a card storage compartment (e.g., Mongan and Incipio), render Claim 18 obvious to a person of ordinary skill in the art.  Ex 45 – Seil Dec., ¶ 26.

### D. <u>CLAIMS 15 AND 22 ARE INVALID UNDER 35 U.S.C. § 112 FOR LACK OF WRITTEN DESCRIPTION</u>

**Claims 15 and 22** lack an adequate written description in the use of the term "long recess" and "long protrusion."  No such elements are described or identified in any way in the written specification (outside of the claims) or the drawings of Spigen 283.  There is no way to determine the scope or existence of the invention from those claims and so there is a failure of an adequate written description, as required by 35 U.S.C. § 112.  Ex 45 – Seil Dec., ¶ 27.

### E. <u>SECONDARY CONSIDERATIONS DO NOT SUPPORT NON-OBVIOUSNESS</u>

There is no evidence of commercial success of products embodying the Spigen 283 patent substantial enough relative to other similar products in the marketplace and reflecting dramatic changes due to the availability of the patented product, to support any claim of non-obviousness of the alleged present invention for any claim of Spigen 283.

Nor is there any unmet long-felt need because, as shown by the prior art cited herein and the analysis below, the problems raise in Spigen 283 existed before the priority date of Spigen and were met by prior art products.  Nor is there any known skepticism expressed about the solution to the problems addressed by Spegin 283, any copying by others of the claimed invention in Spegin 283, any licensing of Spigen 283, or unexpected results obtained by the alleged invention.  There is therefore no known support from secondary considerations to suggest any finding of non-obviousness for any of the combinations of prior art discussed above.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court determine that Spigen 283 is not infringed and is invalid under 35 U.S.C. § 103 in its entirety.


PARK LAW FIRM

Dated:  May 16, 2016


By:  _/s/ Mark L. Sutton_____
John K. Park
Mark L. Sutton
Attorneys for Defendant/Counterclaimant
VERUS U.S.A. LLC

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and am not a party to the within action.  My business address is 3255 Wilshire Blvd., Suite 1110, Los Angeles, California  90010.

On May 16, 2016, I caused the foregoing document(s) described as NOTICE OF LODGING to be served on the parties in this action, as follows:

Mr. Heedong Chae, Esq.
EastWest Law Group
3600 Wilshire Blvd., Suite 702
Los Angeles, CA 90010
hdchae@ewpat.com

( **X** ) (BY PERSONAL DELIVERY)  I am readily familiar with the business practice of my place of employment in respect to personal service.  The foregoing sealed envelope was personally delivered to the above address.

(     ) (BY U.S. MAIL)  I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondences, pleadings and notices for mailing with United States Postal Service.  The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully paid at Los Angeles, CA, in the ordinary course of business.

(     ) (BY EMAIL)  I served a true and correct copy by email to the email address shown above per prior agreement between the parties.

( **X** ) (BY EM/ECF)  It is believed that EM/ECF will automatically generate the court filed version of this document immediately at the time of filing and serve the above named parties.

( **X** ) (FEDERAL)  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: _____May 16, 2016_____                    By: __/s/John K. Park_____
                                                                John K Park