O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SPIGEN KOREA CO., LTD.,<br><br>    Plaintiff,<br><br>    vs.<br><br>ISPEAK CO., LTD.., ET AL.<br><br>    Defendants. | Case No.: SA CV 15-1050-DOC (DFMx)<br><br>ORDER RE: MOTION FOR RULE 11 SANCTIONS [21]; DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [41]; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [43] |

Before the Court are Spigen Korea Co., Ltd.'s ("Spigen" or "Plaintiff") Motion for Summary Judgment ("Plaintiff's Motion for Summary Judgment") (Dkt. 43), ISpeak Co., Ltd. ("ISpeak" or "ISpeaker") and Verus U.S.A., LLC's ("Verus") (collectively, "Defendants") Motion for Summary Judgment ("Defendants' Motion for Summary Judgment") (Dkt. 41), and Verus's Motion for Sanctions ("Sanctions Motion") (Dkt. 21).

## I.    Background

### A.    Facts[1]

This is a patent infringement case in which Spigen alleges Defendants ISpeak and Verus infringed and are infringing Spigen's U.S. Patent No. 9,049,283 ("'283 Patent").

Spigen is the owner of all right, title, and interest in the '283 Patent. Plaintiff's Statement of Undisputed Facts ("Pl.'s SUF") (Dkt. 43-3) No. 1. The '283 Patent covers a case for an electronic device that has a storage compartment to hold personal items, such as credit cards and identification cards. *Id.* No. 2. The case described in the '283 Patent includes three main components: "a soft protective case to cover the electronic device . . . a hard protective frame configured to removably mount over the soft protective case; and a cover." '283 Patent at Col. 3:37–40.

Claims 1 and 16 of the '283 Patent are independent claims; the remaining claims are dependent on either claim 1 or claim 16. Defendants' Statement of Undisputed Facts ("Defs.' SUF") (Dkt. 41-2) No. 45. Claim 1 of the '283 Patent provides:

> A case, having a storage compartment, for an electronic device, comprising:
>
> a soft protective case which comprises a back panel to cover a back portion of the electronic device, a raised wall formed on a bottom surface of the back panel to form the storage compartment, and a side wall extending from a top surface of the back panel along edges of the back panel for significantly covering a side portion of the electronic device;

---

[1] Unless the Court indicates otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Cross Motions. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court did not rely on the disputed evidence.

a hard protective frame, configured to removably mount over the soft protective case wherein the hard protective frame comprises grooves; and a cover which includes rails adapted to mate with and to be slidably mounted on the grooves so that the cover slides along the grooves to open and close the storage compartment,

wherein the soft protective case significantly covers a back portion of the electronic device with the top surface of the back panel and a side portion of the electronic device with the side wall of the soft protective case,

wherein the soft protective case is sufficiently flexible to accept insertion of the electronic device therein and sufficiently rigid to securely retain the inserted electronic device.

'283 Patent at Col. 6:56–7:12.

Claim 16 includes a "sliding means for sliding the cover forward and backward with respect to the hard protective frame." *Id.* at Col. 8:26–27. Claim 17 further provides: "[t]he case of claim 16, wherein the sliding means comprises a pair of grooves formed on the hard protective frame and a pair of rails formed on the cover wherein the rails are configured to mate with and to be slidably mounted on the grooves." *Id.* at Col. 8:28–32.

Plaintiffs accuse Defendants' products of infringing the '283 Patent; the accused products specifically include Damda Slide for iPhone 6/6, Damda Slide for iPhone 6/6S Plus, Damda Slide for Galaxy Note 4, Damda Slide for Galaxy Note 5, Damda Slide for Galaxy S6, Damda Slide for Galaxy S6 Edge, and Damda Slide for Galaxy S6 Edge Plus. Defs.' SUF No. 4. ISpeaker developed and manufactured the accused products, continues to manufacture the accused products, and sold and sells the accused products to Defendant Verus. *Id.* No. 5–7. Verus is the only distributor in the USA who purchases the accused products from ISpeaker. *Id.* No. 8. Verus continues to sell the accused products in the United States. *Id.* No. 57.

### B.    Procedural History

Plaintiff initiated this lawsuit on July 1, 2015. Complaint ("Compl.") (Dkt. 1). In the Complaint, Plaintiff alleges a single claim of patent infringement. *See id.* ¶¶ 9–13. Plaintiff seeks the following relief in its Complaint:

> For a judgment declaring Defendants have infringed one or more claims of the '283 Patent of SPIGEN;
>
> For a judgment awarding SPIGEN compensatory damages as a result of Defendants' infringement of the '283 Patent, together with interest   and costs, and in no event less than a reasonable royalty;
>
> For a judgment declaring that Defendants' infringement of the '283 Patent has been willful and deliberate;
>
> For a judgment awarding SPIGEN treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Defendants' willful and deliberate infringement of the '283 Patent;
>
> For a judgment declaring that this case is exceptional and awarding SPIGEN its expenses, costs, and attorney's fees in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of    Civil Procedure;
>
> For a grant of a permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Defendants from further acts of infringement;
>
> For such other and further relief as the Court deems just and proper.

Compl. at 3–4.

On October 7, 2015, Verus filed an Amended Answer and Counterclaims (Dkt. 20). Verus asserts the following counterclaims: (1) declaratory judgment of non-infringement of the '283 Patent; (2) declaratory judgment of invalidity of the '283 Patent; and (3) declaratory judgment of unenforceability of the '283 Patent. *Id.* at 6–7.

On November 27, 2015, ISpeaker filed an Answer and Counterclaims (Dkt. 30). ISpeaker asserts the same three counterclaims as Verus.

Verus filed its Sanctions Motion on October 13, 2015. In the Sanctions Motion, Verus argues Plaintiff obtained the patent-in-suit by engaging in inequitable conduct. Sanctions Mot. at 2. Thus, Verus asks the Court to award sanctions pursuant to Federal Rule of Civil Procedure 11. *Id.* The parties appeared for a Scheduling Conference on November 30, 2015, at which they agreed the Sanctions Motion should be considered together with the instant Cross Motions for Summary Judgment. *See* Minutes of Scheduling Conference (Dkt. 31).

Plaintiff filed its Motion for Summary Judgment on May 16, 2016. Defendants opposed on May 23, 2016 (Dkt. 49), and Plaintiff replied on May 27, 2016 (Dkt. 55).

Defendants also filed their Motion for Summary Judgment on May 16, 2016. Plaintiff opposed on May 23, 2016 (Dkt. 52), and Defendants replied on May 31, 2016 (Dkt. 57).

The Court held a hearing on the motions on July 13 and July 14, 2016. *See* Minutes of Motion Hearing (Dkt. 63); *see* Minutes of Motion Hearing (Dkt. 64).

## II.   Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-

49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III.    Discussion

The parties move for summary judgment on a number of issues in their respective motions. Defendants first request construction of certain claim language; seek summary judgment in their favor on the issue of infringement; and ask the Court to find the asserted claims of the '283 Patent invalid on obviousness grounds under 35 U.S.C. § 103. *See generally* Defs.' SJ Mot.

Plaintiff likewise seeks summary judgment in its favor on infringement and obviousness. Pl.'s SJ Mot. at 8–20. Plaintiff also seeks summary judgment with respect to the inequitable conduct claim; specifically, Plaintiff "seeks a declaratory judgment of no Inequitable Conduct because Spigen did not withhold material information from the USPTO during the prosecution of the '283 Patent and Spigen did not intend to deceive the USPTO." *Id.* at 21 (citation omitted).

### A.    Claim Construction

As mentioned above, Claim 1 includes a "hard protective frame, configured to removably mount over the soft protective case wherein the hard protective frame comprises grooves; and a cover which includes rails adapted to mate with and to be slidably mounted on the grooves so that the cover slides along the grooves to open and close the storage compartment." '283 Patent at Col. 6:65–7:4. Both parties have proposed construction of the

term "grooves." The Court will also construe the term "sliding means," which is found in Claim 16.[2]

### 1. Legal Standard

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Claim construction "begins with the claim language itself." *Id.* Claim terms are generally given "their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art." *Id.* at 1312–13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). However, the terms must be read in the context of the entire patent. *Phillips*, 415 F.3d at 1314. In interpreting the claim, the court focuses primarily on the intrinsic evidence of record, including the claims themselves, the specification, and if in evidence, the prosecution history. *Id.* at 1312–17; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005).

Among the intrinsic evidence, the specification is always highly relevant to the claim construction analysis – it is the single best guide to the meaning of a disputed term, and is usually dispositive. *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The specification is, thus, the primary basis for construing the claims." *Id.* (quoting *Standard Oil Co. v. Am. Cyanamid Co.,* 774 F.2d 448, 452 (Fed. Cir. 1985)). It is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317. In addition to the specification, the court will also consider the prosecution history, consisting of "the complete record" of the patent. *Id.* at 1317. If, within the prosecution history, a patentee clearly and unmistakably disavowed a claim construction, then it disclaimed that construction. *Omega*

---

[2] As the parties are well aware, the Court conducts claim construction as part of the summary judgment proceedings. *See Conoco, Inc. v. Energy & Env. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[A] district court may engage in claim construction during various phases of litigation[.]"). While Defendants included their claim construction arguments as part of their Summary Judgment, *see* Defs.' SJ Mot. at 3–6, Plaintiff included a separate Claim Construction Brief as the thirteenth attachment to its Summary Judgment Motion, *see* Pl.'s Claim Construction Brief (Dkt. 43-13). Plaintiff then sought to incorporate the entirety of its Claim Construction brief into its Summary Judgment Motion. *See* Pl.'s SJ Mot. at 8 ("Plaintiff proposes eight claim terms for construction and hereby submits Plaintiff's Claim Construction Brief . . . as attached as Exhibit E to Chae Decl., at ¶ 1."). As the parties agreed at the hearing, the Court will construe the terms included as part of the respective Summary Judgment Motions at this time. If desired, the parties may seek additional claim construction prior to trial.

1   *Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003); *SanDisk Corp. v. Memorex*

2   *Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). However, because the prosecution history

3   often lacks the clarity of the specification, it is less useful for claim interpretation purposes.

4   *Phillips*, 415 F.3d at 1317.

5           While the court may also consider extrinsic evidence, including expert testimony,

6   dictionaries, and learned treatises, as the Federal Circuit has recently made clear, such evidence

7   is generally viewed as less reliable than intrinsic evidence. *Phillips,* 415 F.3d at 1317–18.

8   Therefore, the court must use its discretion in admitting and weighing extrinsic evidence,

9   keeping in mind its inherent flaws. *Id.* at 1319.

10          There is also "a presumption that each claim in a patent has a different scope." *Comark*,

11   156 F.3d at 1187; *see also Phillips*, 415 F.3d at 1315. "[T]he presence of a dependent claim that

12   adds a particular limitation gives rise to a presumption that the limitation in question is not

13   present in the independent claim." *Leibel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910

14   (Fed. Cir. 2004).

15                              **2.  Analysis**

16          In their Motions for Summary Judgment, the parties focus their energy on the term

17   "grooves." *See* Defs.' SJ Mot. at 4–6; Pl.'s Mot. at 15; *see also* Pl.'s Opp'n at 2–8. Plaintiffs'

18   position is that both products contains grooves – specifically, Plaintiff's product contains "U"-

19   shaped grooves and the accused products contain "L"-shaped grooves. Pl.'s Opp'n at 1.

20   Defendants argue the accused products do not contain grooves; rather, they contend the hard

21   protective frames of the accused products include "step structures, not grooves." Defs.' SJ Mot.

22   at 7. Unsurprisingly, the parties propose two different construction of "grooves."

23          Defendants argue the "specification of Spigen 283 does not define the term 'grooves'

24   either explicitly or implied and so extrinsic evidence regarding the meaning of 'grooves' may

25   be considered." *Id.* at 5. Moving straight to a dictionary definition, Defendants propose the

26   following construction of the term grooves: "a long, narrow, hollow space cut into a surface."

27   *Id.* at 6 (citation omitted).

28

In response, Plaintiff argues "Defendants are attempting to narrowly construe the claim term 'grooves' to exclude the groove element that is clearly present in the accused products." Pl.'s Opp'n at 3. Specifically, Plaintiff contends "Defendants incorrectly limit the scope of 'grooves' narrowly to include only the cut-out or indentation-type 'grooves,' excluding 'L'-shaped groove[s]." *Id.* Instead, Plaintiff proposes the following definition: "a long narrow channel or depression along an edge or surface." Claim Construction Brief (Dkt. 43-13) at 11.

In support of this broader definition, Plaintiff argues nothing in the specification or the drawings of the '283 Patent limits the definition of grooves. *Id.* at 3–4; *id.* at 8 ("The context of the specification and claims are not drafted to limit the scope of 'groove,' but to embrace various sliding means using grooves and rails."). Further, Plaintiff cites to US20140034531 ("'531 publication"), a cited reference in the '283 Patent. *Id.* at 5. According to Plaintiff, the '531 publication contains both "U"-shaped grooves and "L"-shaped grooves – and thus the Court should not narrowly construe the term grooves. *See id.* at 6–7. Additionally, Plaintiff points to a dictionary definition of its own: "a long narrow channel or depression." *Id.* at 8.

In response, Defendants argue "Plaintiff's definition is too broad and therefore does not define the term 'groove,' because the plaintiff's definition includes a depression along an edge, or literally anywhere." Defs.' Reply at 6. Defendants also reject Plaintiff's characterization of the '531 publication; they argue, "the '531 Pub. appears to have a U-shaped cross section (not an L-shaped cross section)." *Id.* at 9.[3]

As an initial matter, neither the claims nor the specification of the '283 Patent "suggests that 'groove' is a 'technical [term] of art." *Maytag Corp. v. Electrolux Home Prods., Inc.*, 411 F. Supp. 2d 1008, 1045 (N.D. Iowa 2006) (citation and internal quotation marks omitted). "Clearly, no part of the specification to which the parties have pointed the court suggests that the patentee was its own 'lexicographer' as to the meaning of 'grooves,' so that there is no 'governing' definition for 'grooves' to be found in the specification." *Id.* (citation omitted).

Further, the Court finds the parties have not pointed to any convincing intrinsic evidence concerning the meaning of "grooves." The Court concludes the claim language, specifications,

---

[3] Additionally, Defendants dispute Plaintiff's characterization of the relevant drawings. *See* Defs.' Reply at 11.

1    drawings, nor the '531 publication provide a good indication of how the Court should construe
2    the term "grooves."
3          As such, the Court will turn to extrinsic evidence. The Court recognizes that some
4    dictionaries define "grooves" as a "long, narrow, hollow space cut into a surface." *See* Defs.' SJ
5    Mot. Ex. 28 (citing Cambridge English Dictionary (Online)). However, the Court "does not see
6    any evidence that the definition should be limited . . . means of cutting." *Stant Mfg, Inc. v.*
7    *Gerdes GmbH*, No. 1:02-CV-01653 RLY WT, 2004 WL 3315375, at *12 (S.D. Ind. Sept. 27,
8    2004). As the court explained in *Stant*,

9          Like the court in *Beckson Marine,* this court has reviewed the evidence
10         bearing on the meaning of the term as it is used in the patent. Nothing in
11         that evidence limits the groove to only those indentations or cuts that are
12         . . . created by artificial means. Therefore, the court finds that the definition
13         asserted by Gerdes, although technically a dictionary definition of the term,
14         is too restrictive based on the use of the term in this particular patent.
15   *Id.*

16         Because Defendants have provided the Court with no basis for limiting the definition of
17   "grooves" to those that are "cut into a surface," the Court declines to give Defendants' proposed
18   definition. Instead, the Court finds the definition of "groove," in this context, is more properly
19   defined as any long and narrow channel, hollow, cut, or indentation in a surface. *See id.*[4] The
20   Court will thus use that definition of "grooves" in conducting the infringement analysis.

21         In their respective Motions for Summary Judgment, the parties also discuss the phrase
22   "sliding means." Claim 16 specifically provides for a "sliding means for sliding the cover
23   forward and backward with respect to the hard protective frame." '283 Patent at Col. 8:26–27
24   Defendants contend the phrase "sliding means" should be understood to mean the "grooves" as
25   part of the "hard protective frame," and the corresponding rails. *See* Defs.' SJ Mot. at 3. The
26   Court agrees. Claim 17 of the '283 Patent explicitly states, "sliding means comprises a pair of
27   grooves formed on the hard protective frame and a pair of rails formed on the cover." '283

28

---

[4] The Court notes Plaintiff proposed the "long narrow" modifier in its filings, *see* Claim Construction Brief at 26, and that Defendants' dictionary definitions all contain the phrase "long, narrow." *See* Defs.' SJ Mot. at 6 (citing definitions).

Patent at Col. 8:28–30. Based on this clear direction contained in the '283 Patent, the Court finds "sliding means" means rails in a cover that slide along grooves formed in the hard protective frame of a case.

### C.    Literal Infringement

Defendants move for summary judgment of non-infringement of the '283 Patent, and Plaintiff moves for summary judgment of infringement of the '283 Patent.

A determination of patent infringement proceeds in two steps. *Terlep v. Brinkman Corp.*, 418 F.3d 1379, 1381 (Fed. Cir. 2005). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Id.* (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)). Claim construction is an issue of law, *see Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), that is reviewed de novo by the Federal Circuit, *see Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d at 1381 (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)). Where the facts underlying the issue of infringement are undisputed, the function of applying claims to the accused device is the province of the district court. *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1984).

Having construed the disputed term "grooves," the Court now turns to the second step of the analysis. The second step of the analysis centers on whether the accused products contain "grooves" within the meaning of the '283 Patent. To determine infringement, the Court must compare the construed claims to Defendant's accused products. *Terlep*, 418 F.3d at 1381. "For a court to find infringement, the plaintiff must show the presence of every element [of the claim] or its substantial equivalent in the accused device." *Id.* at 1385 (quoting *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994)). An element of an accused product is "substantially equivalent" to an element of the allegedly infringed product if the differences between the two are "insubstantial" to one of ordinary skill in the art. *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1359 (Fed. Cir. 2000).

In their Motion, Defendants argue the accused devices do not literally infringe Claims 1 and 16 of the '283 Patent. Defs.' Mot. at 7–9. Defendants argue that "[i]n the accused products, the elements of the alleged 'hard protective frame' that receive the sliding cover for the card storage compartment are step structures, not grooves." *Id.* at 7. From Defendants' perspective, because the step structures in the accused products "are not cuts in a surface or indentations in a surface," they are not grooves. *Id.* Further, Defendants argue the step structures of the accused product are not grooves because the two sides of the step structure are perpendicular – not opposite – to one another. *Id.* at 7. Because there are no grooves in the accused products, Defendants argue there is no literal infringement. Defendants provide another reason for the "absence of literal infringement." *Id.* at 8. Namely, Defendants note the step structures in the hard protective frame combine with ridges in the soft protective case to form an arguably groove-like structure. *Id.* at 8–9. However, Defendants urge the Court to not consider that a groove because "the soft ridges are offset from the step structure." *Id.* at 9. Defendants assert that because there is no literal infringement of claims 1 or 16, the only independent claims, none of the dependent claims are infringed. *Id.* (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1152 n.9 (Fed. Cir. 1989).

For its part, Plaintiff argues the accused products do contain grooves in the hard protective frame. Pl.'s Mot. at 15. Plaintiff states "a groove can be either 'L'-shaped or 'U'-shaped and the accused products' 'L'-shaped step is also a groove." *Id.* Plaintiff adds the 'L'-shaped steps function as part of sliding means together with the rail of the cover." *Id.* In other words, Plaintiff argues that just like the '283 Patent, the accused products contain grooves in the hard protective frame, and include rails on the cover of the case that slide along those grooves.

The Court finds there are triable issues on the issue of infringement. As noted above, the Court has construed grooves to mean any long and narrow channel, hollow, cut, or indentation in a surface. This definition does not limit grooves to cut-out grooves or indentation grooves, as Defendants would have it. Indeed, based on the Court's construction, it appears the step structures of the accused products *do* create a channel in the hard protective frame of the

accused products. However, the Court cannot definitively conclude, as a matter of law, that the step structure found in the hard protective frame of the accused products is a *narrow* channel. Given this dispute of material fact, summary judgment is improper here .

Even assuming the hard protective frame of the accused product contains grooves, the Court cannot conclude as a matter of law the accused product meets another critical part of the '283 Patent. Specifically, Claim 1 also includes: "a cover which includes rails adapted to mate with and to be slidably mounted on the grooves." '283 Patent at Col. 7:1–3. On page 19 of Defendants' Opposition, they argue the "cover does not slide along . . . the would-be alleged 'grooves.' Instead, the cover slides on soft ridges (on the soft protective case) that are offset from the end of the hard protective frame." Defs.' Opp'n at 19. Indeed, based on its review, the Court notes the cover of the accused product slides smoothly when the hard protective frame is attached to the soft protective case; however, the cover does not slide as smoothly when the hard protective frame is detached form the soft protective case. Thus, it is unclear whether the alleged grooves of the hard protective frame are adapted to mate with the rails of the cover. The Court finds there is a triable question of fact whether the cover of the accused product is "adapted to mate with" the grooves of the hard protective frame, or whether it is actually adapted to mate with the soft ridges of the soft protective case (or potentially both).[5] Again, given this factual dispute, summary judgment on infringement is not appropriate for either party.

Given there are questions of whether the independent claims of the '283 Patent are infringed, the Court cannot conclude at this time that the dependent claims are infringed. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One may infringe an independent claim and not infringe a claim dependent on that claim. The reverse is not true. One who does infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.") (citation omitted); *see also Medtronic Vascular Inc. v. Abbott Cardiovascular Sys., Inc.*, 614 F. Supp. 2d 1006, 1019 (N.D. Cal. 2009)

---

[5] In its separately-attached Claim Construction Brief, Plaintiff includes the following definition of groove: "a long, narrow cut or depression, especially one made . . . to guide motion or receive a corresponding ridge." Claim Construction Brief at 30. Here, there is a factual dispute concerning whether the alleged grooves of the hard protective frame are designed to receive the rails of the cover.

("To the extent that dependent claims 12–13 and 15–16 of the '255 patent are derived from claim 11, summary judgment is also DENIED as to both parties."); *see also Yodlee, Inc. v. Cashedge, Inc.*, No. C 05-01550 SI, 2007 WL 2220970, at *4 (N.D. Cal. Aug. 1, 2007) ("Because Yodlee is not entitled to summary judgment on Claim 1, the Court finds that it is not entitled to summary judgment on dependant Claims 2-6."). As such, the Court DENIES Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment on the issue of literal infringement.

### D.   Doctrine of Equivalents

Plaintiff also contends the accused products infringe the '283 Patent under the doctrine of equivalents, which provides that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).

Here, Plaintiff states "[i]f the court finds that Defendants have avoided literal infringement of any claims, then, in the alternative, the court should find that Defendants have infringed under the doctrine of equivalents." Pl.'s SJ Mot. at 20. Plaintiff provides no explanation after making that statement. *See id.* Indeed, Plaintiff provides *no* analysis of whether the two products perform substantially the same function in substantially the same way to obtain substantially the same result. This lack of analysis is plainly insufficient. *See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) (noting that "particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused devices or process, with respect to the function, way, result test" is required under the doctrine of equivalents).[6] Because Plaintiff only addresses the doctrine of equivalents test in a conclusory manner in its Motion for Summary Judgment, the Court finds summary judgment is not appropriate under the doctrine.

---

[6] To the extent Plaintiff has included such information in one of its many exhibits, it has not pointed the Court to that information with the requisite particularity. *See* Pl.'s SJ Mot. at 11 (providing no citation to evidence in its doctrine of equivalents section).

For their part, Defendants contend the two products do not work in substantially the same way. *See* Defs.' SJ Mot. at 10. First, Defendants point out the soft ridges are in the soft protective case, not the hard protective frame. *Id.* According to Defendants, "the accused devices require precise molding of two independently molded pieces because the accused devices require two different parts to come together." *Id.* (citation omitted). Second, Defendants again argue the accused products do not contain grooves. Defendants also argue the "result" in the accused devices is not substantially the same as the "result" in the claimed invention. *Id.* at 11–12. Notably, Defendants state "the alleged 'cover' is likely dislodged from the alleged 'hard protective frame' upon removal of the alleged 'soft protective case.'" *Id.* at 12. In its Opposition, Plaintiff argues the "groove structure of the '283 patent is identical to that of the accused products. The resistance feature, Defendants argued, is also disclosed in the '283 patent." Pl.'s Opp'n at 17.

While Defendants have made specific arguments under the doctrine of equivalents, the Court finds there are triable issues of material fact. For instance, the parties dispute whether the step structure in the accused products even constitute grooves, and if so, whether they function in the same way as those described in the '283 Patent. Given these key disputes, summary judgment in Defendants' favor is unwarranted.

As such, the Court DENIES both Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment on infringement under the doctrine of equivalents.

### E.    Obviousness

Both parties move for summary judgment on obviousness grounds. Defendants argue all of the alleged claims are invalid pursuant to 35 U.S.C. § 103, while Plaintiff contends a finding of summary judgment of non-obviousness is warranted as a matter of law.

### 1.    Legal Standard

A patent is presumed valid. 35 U.S.C. § 282. "Because a patent issued by the U.S. Patent and Trademark Office is presumed to be valid . . . the evidentiary burden to show facts supporting a conclusion of invalidity is clear and convincing evidence." *Transclean Corp. v. Bridgewood Serv., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002) *(citing WMS Gaming, Inc. v. Int'l*

*Game Techs.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999)). The test for validity encompasses three distinct tests of patenatability: novelty, utility, and non-obviousness. The presumption of validity therefore entails a presumption of novelty, a presumption of utility, and a presumption of non-obviousness. *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707 (Fed. Cir. 1984); *see also Raytheon Co. v. Roper Corp.*, 724 F.2d 951 (Fed. Cir. 1983).

Section 103(a) forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Although obviousness is a question of law, the question is premised on the following underlying factual questions: "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) secondary evidence of non-obviousness." *Seiko Epson Corp. v. Coretronic Corp.*, No. C 06-6946 MHP, 2010 WL 4916424, at *4 (N.D. Cal. Nov. 23, 2010) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007)). The relevant question is "whether the combination was obvious to a person with ordinary skill in the art." *KSR*, 550 U.S. at 420.

## 2. Analysis

Both parties seeks summary judgment on Defendants' counterclaims for declaratory relief on the invalidity of the '283 Patent on obviousness grounds. Defendants bear the burden of proving by clear and convincing evidence that the '283 Patent was obvious. *Transclean Corp.*, 290 F.3d at 1370.

Defendants argue the "claims of Spigen 283 are 'old elements [found in the prior art] with no change in their respective functions,' and are thus 'predicable solutions' that would be obvious to a person of ordinary skill in the art under 35 U.S.C. § 103." Defs.' Mot. at 16 (citation omitted). Defendants point to a number of items of prior art, all of which are in "the identical field of art as the present invention." *Id.* at 17. In particular, Defendants cite the following items of prior art:

1.    Korean Registered Utility Model ("KUM435");

-16-

2.  Plaintiff Spigen's "Slim Armor" cell phone carrier ("Spigen-1");

3.  U.S. Patent Publication No. 2012/0067751 to Mongan et al. ("Mongan");

4.  Incipio's "Stowaway Credit Card Case" ("Incipio");

5.  U.S. Patent No. 8,245,842 to Bau ("Bau");

6.  OtterBox's 'Commuter Series Wallet" ("OtterBox");

7.  DAMDA Cotton case for Galaxy S5 ("DMDA");

8.  DESIGNSKIN for iPhone 5/5S ("DESIGNSKIN-1");

9.  U.S. Patent No. 8,439,191 to Lu ("'191 Patent'").

Defendants contend Claims 1 and 16 are obvious in view of KUM435, Spigen-1, and Mongan. Defs.' Mot. at 18. They argue those items of prior art, "together, have all elements of Claims 1 and 16 with each of those prior art elements performing the same functions in the combination as they performed in their separate prior art." *Id.* at 19. Defendants similarly argue Claims 1 and 16 are obvious when compared to KUM435, Bau, and Mongan prior art, *id.* at 20–21, in light of KUM435 and Incipio prior art, *id.* at 21, and in light of Incipio and OtterBox prior art, *id.* at 22. Defendants add the remaining asserted claims are likewise obvious in light of the above combinations of prior art. *Id.* at 22–24. Defendants rely heavily on a declaration from their retained expert, Oliver Seil. *See* Declaration of Oliver Seil ("Seil Decl.") (Dkt. 41-50); *see also* First Supplemental Expert Report by Oliver Seil ("Seil Report") (Dkt. 41-56). For instance, in discussing the obviousness of Claims 1 and 16 in view of KUM435, Spigen-1, and Mongan, Seil states "KUM435 discloses all elements of Claim 1 and 16 other than removability of the hard protective frame," "Spigen-1 shows that removability element," and both KUM435 and Mongan include the "raised wall element." Seil Decl. ¶ 18. Seil provides a similar analysis with respect to the other prior art combinations. *See id.* ¶¶ 19–26.

Additionally, Seil states that "bringing a 'raised wall' from the 'soft protective case' to enable card storage would be obvious to one of ordinary skill in the art without the disclosure in KUM435 described above." Seil Report at 23. Seil adds, "whether the claimed 'hard protective frame' is removably or fixedly mounted on the 'soft protective case' is a matter of obvious

design choice to a person of ordinary skill in the art." *Id.* at 22. The Court notes Seil does not provide much analysis in the way of secondary considerations. *See* Seil Report at 21.

In response, Plaintiff argues the '283 Patent was not obvious. Plaintiff first notes the '283 Patent was designed to solve a particular problem – namely, designing a case "composed of a soft protective case and a hard protective shell where both elements are separately molded and detachably assembled together," Pl.'s Opp'n at 13, and where that case remained thin and compact, *id.* at 14. To achieve this design, Plaintiff states it formed a card storage compartment on the back of the soft protective case by an enclosed raised wall, an aperture of the hard protective frame to surround the raised wall, and a sliding means comprised of grooves and rails. *Id.* at 14. Plaintiffs adds that to "make the case compact, stylish and integrated, the '283 patent utilized a number of 'complementary' coupling mechanisms . . . in addition to secure coupling mechanisms." *Id.*

In arguing non-obviousness, Plaintiff relies heavily on its expert, Matthew Stein. *See* Rebuttal Expert of Matthew I. Stein ("Stein Report") (Dkt. 43-36); *see also* Supplemental Rebuttal Expert Report of Matthew I. Stein ("Supplemental Stein Report") (Dkt. 52-4). For example, Stein disputes the '283 Patent was obvious in light of the KUM435, Spigen-1, and Mongan combination. *See* Stein Report ¶¶ 175–80. With respect to claims 5 and 20, Plaintiff argues the prior art does not disclose a protuberance that provides structural support. *See* Pl.'s Mot. at 9; Stein Report ¶¶ 231–34. With respect to claim 18, Plaintiff contends the "raised wall" limitation is non-obvious. *See* Mot. at 10; Stein Report ¶¶ 287–88. Stein specifically explains "the limitation 'a raised wall formed on a bottom surface of the back panel to form the storage compartment' is not taught by KUM 435." *Id.* ¶ 160. He adds that, contrary to Defendants' position, Mongan does not disclose the raised wall element. *See id.* Additionally, Plaintiff disputes the relevant prior art contained an aperture of the hard protective frame that surrounds the raised wall along the outer side of the raised wall. Mot. at 11; Stein ¶ 287. Regarding the independent claims – Claims 1 and 16 – Plaintiff again focuses on the novelty of the "raised wall," and the fact that the aperture and bottom surface of the soft protective case comprise the storage compartment. *See, e.g.*, Stein Report ¶¶ 97, 113, 123.

In addition to discussing the specific elements, Stein contends Defendants have not presented any specific *reason* why it would have been obvious to combine the prior art in the particular way Plaintiff did. *See id.* ¶ 165. Specifically, Stein states, "Seil's explanation for why it would be obvious to combine these references boils down to 1) it just would have been; or 2) because two references relate to cell phone cases it would have been obvious to combine them." *Id.* Further, Stein dedicates a portion of his report to secondary considerations, including the commercial success of the claimed inventions, praise and industry acclaim for the claimed inventions, and copying by others in the industry. *See id.* ¶¶ 315–30.

In light of the conflicting evidence on this issue, the Court finds genuine issues of material fact preclude the entry of summary judgment on obviousness grounds. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors, U.S.A., Inc.*, 617 F.3d 1296, 1304 (Fed. Cir. 2010). The Court cannot say as a matter of law that it would have been obvious to design the case in the way Plaintiff has done so; additionally, Defendants have not clearly provided an "articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbott Labs*, 512 F.3d 1363, 1373 (Fed. Cir. 2008). Additionally, based on the Court's review, the parties have legitimate disputes on both the scope and content of the prior art, and the differences between the prior art and the claims at issue. *Seiko*, 2010 WL 4916424, at *4. Plaintiff "has adduced evidence of the significant commercial success . . . which implies innovation on Plaintiff's part." *QDS Injection Molding, L.L.C. v. United Maxon, Inc.*, No. SACV 09-1412 DOC (RNBx), 2011 WL 1706512, at *9 (C.D. Cal. May 4, 2011) (citation omitted); *see, e.g.*, Stein Report ¶ 318. Further, both parties have providing conflicting expert declarations. The "inconsistencies among the expert testimony . . . raise questions of credibility and weight. Therefore, issues of material fact remain with respect to obviousness." *Radware, Ltd. v. F5 Networks, Inc.*, Case No. 5:13-cv-02024-RMW, 2015 WL 7960004, at *17 (N.D. Cal. Dec. 4, 2015).

Accordingly, both Motions for Summary Judgment on obviousness grounds are DENIED.

### F.   Inequitable Conduct

Plaintiff seeks summary judgment on the issue of inequitable conduct; specifically, Plaintiff "seeks a declaratory judgment of no Inequitable Conduct because Spigen did not withhold material information from the USPTO during the prosecution of the '283 Patent and Spigen did not intend to deceive the USPTO." Pl.'s Mot. at 21 (citation omitted).

"To establish unenforceability based on inequitable conduct in the PTO, the alleged infringer must show that information material to patentability was withheld from the PTO, or material misinformation was provided to the PTO, with the intent to deceive or mislead the patent examiner into granting the patent." *TV Interactive Data Corp. v. Sony Corp.*, No. C 10-0475 PJH, 2012 WL 6020113, at *23 (N.D. Cal. Dec. 3, 2012) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–92 (Fed. Cir. 2011) (en banc)).

The accused infringer must prove two separate elements, intent and materiality. District courts may infer intent from circumstantial evidence. *Therasense*, 649 F.3d at 1290. However, "the accused's specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *TVIM, LLC, Inc.*, Case No. 13-cv-04545-HSG, 2015 WL 3956313, at *8 (N.D. Cal. June 28, 2015) (citation omitted); *see also Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 873 (Fed. Cir. 1988) (finding the evidence "must be sufficient to require a finding of deceitful intent in the light of all the circumstances").

With respect to materiality, "[b]ecause neither mere nondisclosure or prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality." *Therasense*, 649 F.3d at 1292–93. An exception to this but-for requirement is carved out, however, when the alleged inequitable conduct is "affirmative egregious misconduct." *Id.* at 1292.

Here, Defendants contend Plaintiff failed to disclose certain items of prior art to the PTO. *See* Defs.' Opp'n at 24. Defendants largely focus on two pieces of prior art: KUM435 and Spigen-1. *See id.*

Plaintiff argues that failure to disclose these prior art items was not material.

Specifically, Plaintiff contends there are several critical differences between the '283 Patent and KUM435, Pl.'s Mot. at 23, and that a variety of other prior art references involved "completely different invention[s]," *id.* at 24. Plaintiff also broadly states, without reference to any declaration or other pieces of evidence, that "[t]here was no intent to deceive the USPTO." *Id.*

In their Opposition, Defendants argue there are triable issues of fact regarding both materiality and intent to deceive. Defs.' Opp'n at 24–25. Thus, Defendants contend KUM435 discloses all the elements of Claim 16 except the "removably" limitation, and that KUM435 was published on April 28, 2016, before the provisional filing of the '283 Patent. *Id.* at 24. Additionally, Defendants contend Plaintiff was intimately aware with Spigen-1 when it prosecuted the '283 Patent, especially considering Spigen was accused by the owner of KUM435 of infringing KUM435 via letter. *See id.* at 25. This letter was sent "prior to filing of the required information disclosure statement to the U.S.P.T.O." *Id.* at 25 (citing *Id.* Ex. 62 (Dkt. 49-11) at 1 ("It has been discovered that your company's product . . . is infringing Iruum Design Skin's registered utlity model number 20-0472435[.]" )).[7]

Given the present record, the Court finds there are triable issues on both materiality and intent. As discussed in the context of the 35 U.S.C. § 103, there are genuine disputes of fact concerning the scope and relevance of KUM435 as it relates to the '283 Patent. Additionally, the Court notes Spigen had knowledge of KUM435 prior to the prosecution of the '283 Patent, and even more, was accused of infringing KUM435, yet it still decided not to disclose KUM435. Drawing all inferences in Defendants' favor, a reasonable jury could find the '283 Patent applicant acted with a specific intent to deceive the PTO. *See Worldwide Home Prods., Inc. v. Bed, Bath & Beyond, Inc.*, No. 11CV3633-LTS-MHD, 2015 WL 568710, at *10 (S.D.N.Y. Feb. 11, 2015) ("Selectively withholding material information is indicative of an intent to deceive for the purposes of inequitable conduct."); *see also TVIIM, LLC. v. McAfee, Inc.*, Case No. 13-cv-04545-HSG, 2015 WL 3956313, at *9 (N.D. Cal. June 28, 2015) ("Given

---

[7] Plaintiff notes in its Reply that its CEO "immediately replied [to the letter] by stating KUM '435 is significantly and materially different from Spigen's accused product which practice the '283 patent and thus, there is no infringement." Pl.'s Reply at 23.

the arguable similarities between HostCHECK and HostGUARD, a reasonable jury could conclude that TVIIM's failure to present the PTO with evidence of HostGUARD provided a misleadingly incomplete description of prior art that can be considered evidence of deceptive intent to mislead the PTO.") (citations and internal quotation marks omitted). The issue of whether Plaintiff genuinely believed KUM435 simply had no relevance, or whether Plaintiff was intending to deceive the PTO, cannot be resolved definitively at this stage. That question is best left to a jury. As such, the Court DENIES Plaintiff's Motion as to the issue of inequitable conduct.

### G.    Motion for Sanctions

Finally, the Court will consider Defendant Verus' Sanctions Motion, which was subsequently continued to be considered concurrently with the instant Motions for Summary Judgment. In its Sanctions Motion, Verus requests the Court to award sanctions, including attorney's fees, against Plaintiff and Plaintiff's counsel pursuant to Federal Rule of Civil Procedure 11. Sanctions Mot. at 2.

### 1.    Legal Standard

"Rule 11 provides for the imposition of sanctions when a [claim] is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994) (citing *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992)); *Operating Pension Trust v. A-C Co.*, 859 F.2d. 1336, 1344 (9th Cir. 1988). The Court "must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted). The imposition of sanctions is a matter within the court's discretion. Fed. R. Civ. P. 11(c). *See Gotro v. R & B Realty Grp.*, 69 F.3d 1485, 1488 (9th Cir. 1995) (noting that district courts have "wide discretion in determining whether Rule 11 sanctions are appropriate").

However, Rule 11 must not operate to be "a bar to [the] legal process." *Operating Pension Trust*, 859 F.2d at 1344. Thus, "[c]ourts must also 'avoid using the wisdom of

hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted.'" *Id.* (quoting Fed. R. Civ. Pro. 11 Advisory Committee notes).

### 2. Analysis

Here, Verus contends Rule 11 sanctions are appropriate because Plaintiff and its counsel failed to disclose KUM435 to the USPTO. Mot. at 4 ("Spigen never disclosed KUM '435, or its corresponding products, to the USPTO.") (citations omitted). Verus argues the elements common to all claims of the '283 Patent are found in KUM 435. *Id.* at 7. Verus adds that "Plaintiff's counsel was informed by Defendant's counsel of the materiality of KUM '435" through the cease and desist letter. *Id.* at 13.

In response, Plaintiff argues "KUM '435 discloses an invention significantly different from that of the '283 Patent and does not invalidate any claim of the '283 Patent under 35 U.S.C. § 102 or 103." Opp'n to Sanctions Mot. at 6. Plaintiff also argues Verus' allegations are based on an incorrect translation of KUM435, KUM is not material 435, the USPTO would have allowed all claims of the '283 Patent had it been aware of KUM435, and that there was no intent to deceive the USPTO. *Id.* at 11–15.

Above, the Court found there were triable issues on both materiality and intent with respect to Plaintiff's alleged inequitable conduct. Based on the present record, the Court cannot definitively conclude Plaintiff acted inequitably before USTPO. As such, it would be inappropriate to issue sanctions pursuant to Rule 11 based on Plaintiff's alleged inequitable conduct. Thus, in its discretion, the Court DENIES Defendant's Motion for Sanctions.

**IV.     Disposition**

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment, DENIES Defendants' Motion for Summary Judgment, and DENIES Verus's Sanctions Motion.

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

DATED:  July 22, 2016