1   Heedong Chae (SBN 263237)
2   Email: hdchae@ewpat.com
    Richard Kim (SBN 272184)
3   Email: rkim@ewpat.com
4   **East West Law Group PC**
    3600 Wilshire Blvd., Suite 702
5   Telephone: (213) 387-3630
6   Facsimile: (213) 788-3365

7
    Michael C. Hewitt (SBN 148678)
8   **Law Offices of Michael C. Hewitt**
9   2082 Michelson Drive, Suite 300
    Telephone: (949) 825-5260
10  Facsimile: (949) 825-5261

11
12  ***Attorneys for Plaintiff,***
    ***Spigen Korea Co., LTD.***
13
14              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
15
16  SPIGEN KOREA CO., LTD., a          Case No.: 8:15-cv-01050 DOC (DFMx)
    Republic of Korea corporation,      Assigned to Hon. David O. Carter
17
18              Plaintiff,             **PLAINTIFF SPIGEN KOREA CO.,**
                                       **LTD'S MEMORANDUM OF**
19          v.                         **CONTENTIONS OF FACTS AND**
                                       **LAW**
20
21  ISPEAK[ER] CO., LTD., a Republic of
    Korea corporation; VERUS U.S.A.,   **Trial Date:**
22  LLC, a California limited liability   Date:      September 6, 2016
    company; DOES 1 though 10, inclusive,  Time:      8:30 a.m.
23                                       Dept:      9D
24              Defendants.            Location:  411 West Fourth Street,
                                                  Santa Ana, CA 92701
25
26
27
28

VERUS U.S.A., LLC, a California
limited liability company,

               Counter-Plaintiff,

           v.

SPIGEN KOREA CO., LTD., a
Republic of Korea corporation,

               Counter-Defendant.

**JURY TRIAL DEMANDED**

*[L.R. Civ. 16-4]*

# TABLE OF CONTENTS

I.    SUMMARY OF SPIGEN'S CLAIMS...........................................................4

    A.    Background .................................................................................4

    B.    Cause of Action for Infringement on the '283 Patent
        (Direct Infringement) ................................................................5

        1.    Elements to Prove Infringement Based upon Direct
                Infringement..................................................................5

        2.    Summary of Evidence Relied on in Support of the Cause
                of Action ....................................................................6

            a.    Claim Construction.........................................6

            b.    Infringement ....................................................6

    C.    Cause of Action on Infringement (Doctrine of
        Equivalents).................................................................................7

        1.    Elements to Prove Infringement Based upon the Doctrine
                of Equivalents .............................................................7

        2.    Summary of Evidence to Prove Infringement Based upon
                the Doctrine of Equivalents ........................................8

    D.    Willful Infringement of the Asserted Claims...............................8

        1.    Elements to Demonstrate Willful Infringement .......................8

        2.    Summary of Evidence to Demonstrate Willful
                Infringement..................................................................9

    E.    Remedies for Infringement................................................10

        1.    Elements to Demonstrate Lost Profits ......................................10

        2.    Summary of Evidence to Demonstrate Damages Based
                Upon Lost Profits........................................................10

        3.    Elements to Demonstrate Reasonable Royalty.........................11

        4.    Summary of Evidence to Demonstrate Damages Based
                Upon Reasonable Royalty...........................................11

5. Elements to Demonstrate that Spigen is Entitled to a
Permanent Injunction .................................................................11

6. Summary of Evidence to Demonstrate that Spigen is
Entitled to a Permanent Injunction ...........................................12

II. COUNTERCLAIMS AND AFFIRMATIVE DEFENSES...........................12

A. Counterclaim 1 and Second Affirmative Defense:
Defendants Ispeaker and Verus did not Infringe on the
'283 Patent...................................................................................12

1. Elements of Non-Infringement ..................................................12

2. Key Evidence in Opposition to Defendants' Counterclaim
and Second Affirmative Defense for Non-Infringement..........13

B. Counterclaim 2 and Third Affirmative Defense:
Invalidity of the '283 Patent......................................................13

1. Elements of Invalidity of the Patent .........................................13

2. Key Evidence in Opposition to Defendants' Counterclaim
2 and Third Affirmative Defense................................................16

C. Counterclaim 3 and Eighth Affirmative Defense:  The
'283 Patent is Unenforceable Because of Inequitable
Conduct in Front of the USPTO.................................................16

1. Elements of Inequitable Conduct...............................................16

2. Key Evidence in Opposition of Defendants'
Counterclaim 3 and Eighth Affirmative Defense ....................18

D. First Affirmative Defense for Failure to State a Claim........................19

E. Fourth Affirmative Defense for Failure to Mark ................................19

1. Elements of Patent Marking.......................................................19

2. Key Evidence in Opposition to Fourth Affirmative
Defense for Failure to Mark.......................................................19

F. Fifth Affirmative Defense for Limitations on Damages and Costs based on 35 U.S.C. 287 and 35 U.S.C. 288........................19

  1. Elements of Limitation of Damages and Costs ........................20

  2. Key Evidence in Opposition to Fifth Affirmative Defense for Limitation on Damages and Costs .......................................20

G. Sixth Afffirmative Defense for Estoppel, Acquiescence, and Waiver ........................................................................20

H. Seventh Affirmative Defense Based Upon Later Discovered Evidence ........................................................20

III. ANTICIPATED EVIDENTIARY ISSUES .................................20

 A. Motions in Limine .......................................................20

IV. ISSUES OF LAW ........................................................23

 A. Claim Construction .....................................................23

V. BIFURCATION .........................................................244

VI. JURY TRIAL............................................................255

VII. ATTORNEYS' FEES ...................................................255

VIII. ABANDONMENT OF ISSUES ........................................255

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*1st Media LLC v. Electronic Arts, Inc.*, 694 F.3d 1367 (Fed. Cir.

4

2012)........................................................................................................17

5

*Datascope Corp. v. SMEC, Inc.*, 776 F.2d 320 (Fed. Cir. 1985.)............................7

6

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). ...............................11, 25

7

*Ferguson Beauregard/Logic Controls, Div of Dover Resources, Inc.*

8

*v. Mega Systems, LLC*, 350 F.3d 1327 (Fed. Cir. 2003) ..........................................9

9

*Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1211

10

(Fed.Cir.1987) ........................................................................................24

11

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966)............................15

12

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605

13

(1950).........................................................................................................7

14

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508

15

(Fed. Cir. 1990) .......................................................................................8

16

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923

17

(2016).........................................................................................................8

18

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed.Cir.

19

2000).........................................................................................................5

20

*In re Rosuvastatin Calcium Patent Litigation*, 703 F.3d 511 (Fed. Cir.

21

2013).......................................................................................................17

22

*Interactive Health LLC v. King Kong USA, Inc.*, 2008 WL 8793640

23

(C.D. Cal. 2008) ....................................................................................25

24

*Knorr-Bremse Systeme Fuer Natzfahrzeuge GmbH v. Dana Corp.*,

25

383 F.3d 1337 (Fed. Cir. 2004)..............................................................8

26

*KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007) ........................13, 14

27

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 2004 WL 2260626

28

(N.D. Ill. 2004) .....................................................................................25

*Newport Corp. v. Qualcomm, Inc.*, 543 F.3d 683 (Fed. Cir. 2008)..........................5

*Octane Fitness LLC v. ICON Health and Fitness, Inc.*, 134 S.Ct. 1749 (2014). ....................................................................................................7

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978)..........................................................................................................9

*Paragon Podiatry Lab. Inc. v. KLM Labs.*, Inc., 984 F.2d 1182 (Fed.Cir.1993) ................................................................................................24

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000) ....................................................................................24

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) .......................8

*Riles v. Shell Exploration & Prod. Co*., 298 F.3d 1302 (Fed. Cir. 2002)......................................................................................................5

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995).................9

*Star Scientific v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008)......................................................................................................17

*Taltech Limited v. Esquel Enterprises Limited*, 604 F.3d 1324 (Fed. Cir. 2010).....................................................................................................16

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed.Cir.2011) ................................................................................................17

*TVIIM, LLC. V. McAfee, Inc.*, 2015 WL 3966313 at *9 (N.D. Cal. 2015).........................................................................................................17

*Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997)*..........................................................................................................8

*Westvaco Corp. v. International Paper Co.*, 991 F.2d 735 (Fed. Cir. 1993).........................................................................................................8

*WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999).........................................................................................................8

*Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F. 3d 1308 (Fed. Cir. 2010) ...........................................................................................10

**Statutes**

28 U.S.C. §1331 ...................................................................................4

28 U.S.C. §1338 ...................................................................................4

28 U.S.C. §1391 ...................................................................................4

28 U.S.C. §1400 ...................................................................................4

35 U.S.C. §103 ............................................................................14, 16

35 U.S.C. §271 ....................................................................................5

35 U.S.C. §282 ..................................................................................14

35 U.S.C. §284 ..................................................................................10

35 U.S.C. §285 ..................................................................................25

35 U.S.C. §286 ..................................................................................19

35 U.S.C. §287 ...........................................................................19, 20

35 U.S.C. §288 ...........................................................................19, 20

Fedeeral Rules of Civil Procedure 30(b)(6)........................................7

**Rules**

United States District Court Central District of California, Local Rule

16-4 .................................................................................................4

Pursuant to Local Rule 16-4, Plaintiff and Counter-Defendant Spigen Korea Co., Ltd. (hereinafter, "Spigen" or "Plaintiff") submits the following Memorandum of Contentions of Fact and Law.

## I.   SUMMARY OF SPIGEN'S CLAIMS

### A.   Background

1.    This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

2.    This Court has subject matter jurisdiction over all claims and counterclaims in this action pursuant to 28 U.S.C. §§1331 and 1338(a).

3.    This Court has personal jurisdiction over Defendants Ispeaker Co., Ltd. (hereinafter, "Ispeaker") and Verus U.S.A., LLC (hereinafter, "Verus" and collectively, "Defendants") because Defendants regularly transact and solicit business in this District.  Additionally, this Court has personal jurisdiction over Defendants because a substantial part of the relevant events occurred in this District.

4.    Venue is proper in this district pursuant to 28 U.S.C. §§1391(b), 1391(c), 1391(d), and 1400(b) because Ispeaker and Verus each regularly and systematically transact business and have committed acts of infringement (whether direct or contributory) in this judicial district.

5.    This action arises out of Defendants' manufacture, sales, offering for sale, use, and/or import of products that infringe on Spigen's U.S. Patent No. 9,049,283 (hereinafter, the "'283 Patent").

6.    The '283 Patent was filed on December 5, 2014 and claims priority to U.S. Provisional Patent Application No. 62/012,962, filed on June 16, 2014.  The effective filing date for all claims of the '283 Patent is June 16, 2014 – except claim 21 which was not asserted for infringement.

7.    Spigen's '283 Patent is valid under 35 U.S.C. §103 because none of

1  its claims are obvious to a person in the ordinary skill in the art.

2       8.     Defendants designed, marketed, and sold in the United States the

3  cases sold and being sold under the brand name "Damda Slide" which include

4  Damda Slide cases for iPhone 6/6S, iPhone 6/6S Plus, Galaxy Note 4, Galaxy

5  Note 5, Galaxy S6, Galaxy S6 Edge, and Galaxy S6 Edge Plus (hereinafter,

6  "Accused Products").

7       9.     Since at least July 1, 2015, Ispeaker and Verus had knowledge of the

8  '283 Patent and the rights of Spigen with respect to that Patent.  Despite this

9  knowledge and in derogation of the rights of Spigen, Defendants, to date, continue

10  to manufacture and sell the Accused Products.  Defendants' actions are willfully

11  committed and therefore Defendants are liable for willful infringement of the '283

12  Patent.

13       10.    Spigen alleges that the Accused Products infringe on the following

14  claims 1, 2, 3, 4, 5, 6, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 22 of the

15  '283 Patent (hereinafter, "Asserted Claims").

16       11.    Spigen seeks a judgment that Defendants Ispeaker and Verus have

17  infringed on the '283 Patent in violation of 35 U.S.C. §271.  Spigen also seeks

18  permanent injunction and its damages for the infringement, enhanced damages,

19  pre-judgment interest, post-judgment interest, and its attorney's fees and cost

20  incurred herein.

21      **B.**    **Cause of Action for Infringement on the '283 Patent (Direct**

22               **Infringement)**

23       Defendants Ispeaker and Verus have directly infringement on the Asserted

24  Claims of the '283 Patent.

25      **1.**    **Elements to Prove Infringement Based upon Direct**

26               **Infringement**

27       Infringement analysis "requires two steps: (1) claim construction to

28  determine the scope and meaning of the asserted claims, and (2) a comparison of

the properly construed claims with the allegedly infringing device … to determine whether the device … embodies every limitation of the claims." *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000).  Here, Spigen will prove literal infringement by proving that the Accused Products infringe on every limitation in the Asserted claims.  *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1308 (Fed. Cir. 2002).  In order to prove direct infringement, Spigen will rely on both direct and circumstantial evidence. *Newport Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008).

> ## 2.  Summary of Evidence Relied on in Support of the Cause of Action

> ### a.  Claim Construction

On July 22, 2016, the Court issued a ruling constructing the claim terms, "grooves" and "sliding means."  The Court indicated that it would be taking the plain and ordinary meaning of the remaining terms.  The plain and ordinary meaning of the claim terms can be based upon the dictionary definitions of the terms, the ordinary and customary meaning of the terms, the patent and file history, and the use of the terms by persons of the ordinary skill in the art.

The claim terms have been appropriately defined in the '283 Patent.  Spigen will also introduce evidence of other patents or patent applications that define the claim terms in their plain and ordinary meaning.  Spigen will also introduce evidence and testimony that the proposed definitions of the claim terms are the customary and ordinary meaning of the claim terms to persons of the ordinary skill in the art.

> ### b.  Infringement

Spigen's infringement evidence is summarized below and explained in more detail in Spigen's final infringement contentions, in the expert reports and deposition of Spigen's technical expert, Matthew I. Stein, P.E., the deposition of Defendants' technical expert, Oliver Seil, and in Spigen's Memoranda of Points

and Authorities in support of its Motion for Summary Judgment, each of which is incorporated by reference.

Spigen will demonstrate that the Accused Products infringe on the Asserted Claims. Defendants Ispeaker and Verus directly infringe by making, using, selling, offering to sell, and importing the Accused Products.

The evidence at trial will include documents and testimony including the design, specification, and functions of the Accused Products. Spigen will introduce the Accused Products which will clearly show that they include the limitations in the Asserted Claims. Spigen will also rely on both Ispeaker and Verus's responses to its Request for Admissions and other discovery responses. Spigen will also rely on the deposition testimony of Ispeaker and its employees and Verus and its employees – including Rule 30(b)(6) witnesses – describing the design and operation of the Accused Products. Additionally, Spigen will rely on the deposition testimony of Defendants' technical expert, Oliver Seil, who described some of the Asserted Claims that are in the Accused Products. Finally, Spigen's technical expert, Matthew I. Stein, will provide testimony and demonstrate the infringement of the Asserted Claims by the Accused Products.

## C.   Cause of Action on Infringement (Doctrine of Equivalents)

Defendants Ispeaker and Verus have infringed on the Asserted Claims based upon the doctrine of equivalents.

### 1.   Elements to Prove Infringement Based upon the Doctrine of Equivalents

A claim can be used to exclude devices or processes even though they are not literally within the language of the claim as properly interpreted. The patentee must prove the fact of infringement under the doctrine of equivalents by a preponderance of evidence. *See, e.g., Datascope Corp. v. SMEC, Inc.,* 776 F.2d 320, 325-26 (Fed. Cir. 1985.) An element in the accused product is equivalent to a claimed element if the differences between the two elements are "insubstantial"

to one of ordinary skill in the art. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). The traditional test for infringement under the doctrine of equivalents has been whether an accused element "performs substantially the same function in substantially the same way to obtain substantially the same result" as the claimed element. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608-09 (1950).

> **2.**    **Summary of Evidence to Prove Infringement Based upon the Doctrine of Equivalents**

The evidence at trial will include documents and testimony including the design, specification, and functions of the Accused Products.  Spigen will introduce the Accused Products which will clearly show that they perform substantially the same function in substantially the same way to obtain substantially the same result as each of the elements in the Asserted Claims. Additionally, Spigen's technical expert, Matthew I. Stein, will provide testimony and demonstrate the infringement of the Asserted Claims by the Accused Products based upon the doctrine of equivalents.

> **D.**    **Willful Infringement of the Asserted Claims**
> **1.**    **Elements to Demonstrate Willful Infringement**

Willfulness is determined by the district courts in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness LLC v. ICON Health and Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).  Previously, willfulness had to be proven by clear and convincing evidence, but as of recently, the Court has said that willfulness can be shown by a preponderance of the evidence. *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1934 (2016).  Relevant facts of willful infringement include, but are not limited to:

> 1.    Whether or not Defendants are offering any advice of counsel to support an alleged good faith belief of non-infringement or invalidity (*Knorr-Bremse Systeme Fuer Natzfahrzeuge GmbH v. Dana Corp.*,

383 F.3d 1337, 1343 (Fed. Cir. 2004));

2. Whether or not Defendants acted in accordance with the standards of commerce for its industry;

3. Whether or not Defendants intentionally copied a product of Spigen that is covered by the patents (*See, WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (where WMS first developed a design that could not compete with the patented design and WMS chose to go forward with the infringing design with willful disregard for ICT's rights under the patent));

4. Whether or not there is a reasonable basis to believe that Defendants did not infringe or had a reasonable defense to infringement (*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990));

5. Whether or not Defendants made a good-faith effort to avoid infringing the patents, for example, whether Defendants attempted to design around the patents (*WMS Gaming* at 1354, *citing Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993)); and

6. Whether or not Defendants tried to cover up its infringement (*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).)

## 2. <u>Summary of Evidence to Demonstrate Willful Infringement</u>

The evidence at trial will include documents and testimony including the design, specification, and functions of the Accused Products. Spigen will also introduce documentary evidence of the development of the Accused Products, physical evidence of the Defendants' product prior to the development of the Accused Products and the Accused Products themselves. Spigen will also introduce documentary evidence that Defendants continued to sell the Accused

Products even after receiving the cease and desist letter from Spigen.  Spigen will further rely on documents and testimony to demonstrate that the infringement was willful.

///

### E.    Remedies for Infringement

Once Spigen proves infringement, it is entitled to damages adequate to compensate it for the infringement (i.e. lost profits that are the result of the infringement), but no less than the reasonable royalty.  35 U.S.C. §284; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995).

### 1.    Elements to Demonstrate Lost Profits

To prove that it is entitled to lost profits resulting from Defendants' infringement, Spigen must show a reasonable possibility that, but for Defendants' infringement, Spigen would have made more sales.  *See, Ferguson Beauregard/Logic Controls, Div of Dover Resources, Inc. v. Mega Systems, LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003).  Spigen will establish lost profits by proving that: (1) there was a demand for the patented products; (2) that there were no acceptable non-infringing alternatives; (3) that Spigen had the manufacturing and marketing capacity to make any infringing sales actually made by Defendants; and (4) the amount of profit Spigen would have made if Defendants had not infringed. *See, Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152,1156 (6th Cir. 1978).

### 2.    Summary of Evidence to Demonstrate Damages Based Upon Lost Profits

Evidence at trial will include documents and testimony including the sales records of the Accused Products and sales records of Spigen's products practicing the '283 Patent (hereinafter, "Practicing Products").  Specifically, Spigen will introduce documentary evidence of sales data of the Accused Products and

Spigen's costs.  Spigen will introduce testimony of its executives and employees with responsibility for marketing and sales of its Practicing Products.  Spigen will also introduce the testimony of its damages expert, Jules H. Kamin, M.B.A., Ph.D, to explain why the testimony and financial documents demonstrate that Defendants' infringement resulted in Spigen's lost profits.

### 3.   Elements to Demonstrate Reasonable Royalty

Spigen will be entitled to reasonable royalty for all infringing sales by Defendants for which it has not been awarded lost profits damages.  A reasonable royalty is the payment that would have resulted from a hypothetical negotiation between a patent holder and the infringer taking place just before the time when the infringing sales first began.  *See, Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F. 3d 1308, 1319 (Fed. Cir. 2010).

### 4.   Summary of Evidence to Demonstrate Damages Based Upon Reasonable Royalty

Evidence at trial will include documents and testimony including the sales records of the Accused Products, sales records of Spigen's practicing products. Specifically, Spigen will introduce documentary evidence of sales data of the Accused Products and Spigen's costs.  Spigen will introduce testimony of its executives and employees with responsibility for marketing and sales of its Practicing Products.  Spigen will also introduce additional evidence concerning the value and benefits of the patented technology and comparable technologies. Spigen will also introduce the testimony of its damages expert, Jules H. Kamin, to explain why the testimony and financial documents demonstrate that Spigen is entitled to the reasonable royalty it claims.

### 5.   Elements to Demonstrate that Spigen is Entitled to a Permanent Injunction

Spigen is entitled to a permanent injunction if it can demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) that, considering the balance of hardships between Spigen and Defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See, eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-392 (2006).

### 6.   Summary of Evidence to Demonstrate that Spigen is Entitled to a Permanent Injunction

Spigen will demonstrate that it is entitled to a permanent injunction. Specifically, Spigen will demonstrate that it has suffered and continues to suffer irreparable injury, that monetary damages cannot compensate for that injury, that the balance of hardships favors entry of an injunction, and that the public interest will not be disserved by an injunction.

Spigen will introduce testimony from its executives and employees with responsibility for the marketing of its products and testimony of executives and employees with parallel responsibilities at Defendants Ispeaker and Verus.  The evidence will demonstrate that Defendants are competing directly against Spigen and admittedly trying to achieve sales at Spigen's expense.  Spigen will also introduce the testimony of its damages expert, Jules H. Kamin, to explain why the monetary damages will not be able to compensate Spigen for the injuries caused by Defendants' infringement.

## II.   COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

### A.   Counterclaim 1 and Second Affirmative Defense:  Defendants Ispeaker and Verus did not Infringe on the '283 Patent

#### 1.   Elements of Non-Infringement

To prevail on their counterclaim of non-infringement and second affirmative defense for non-infringement, Defendants must prove based upon the preponderance of the evidence that they did not directly infringe on any of the Asserted Claims or infringe based upon the doctrine of equivalents.  The elements of direct infringement are laid out in Section I(B) and the elements of infringement based upon the doctrine of equivalents are laid out in Section I(C).

### 2.      Key Evidence in Opposition to Defendants' Counterclaim and Second Affirmative Defense for Non-Infringement

As discussed in Sections I(B)(2) and I(C)(2), Spigen will present evidence proving Defendants' infringement, which by definition will defeat Defendants' Counterclaim for non-infringement and Second Affirmative Defense for Non-Infringement.

## B.      Counterclaim 2 and Third Affirmative Defense:  Invalidity of the '283 Patent

### 1.      Elements of Invalidity of the Patent

Defendants argue that all of the asserted claims are obvious in light of prior art, specifically:

a.      Korean Utility Model 20-0472435 (hereinafter, "KUM '435")

b.      U.S. Patent No. 8,245,842 (hereinafter, " '842 Patent")

c.      U.S. Patent Application Publication No. U.S. 2012/0067751 by Mongan, et. al. (hereinafter, " '751 Patent")

d.      Incipio Stowaway Credit Card Case for iPhone 4/4s (hereinafter, "Incipio")

e.      Speck CandyShell for iPhone 3 (hereinafter, "Speck CandyShell")

f.      Otterbox Commuter Series Wallet for iPhone 5 and 5s (hereinafter, "Otterbox Wallet")

g.      DesignSkin Slider Case for iPhone 5/5s (hereinafter, "Design Skin")

h.    Verus Damda Cotton for Samsung Galaxy S5 (hereinafter, "Damda")

i.    Spigen Jelly Bean Button 3EA for Samsung Galaxy S4, Spigen Model No. SGP10204 (hereinafter, "Spigen").

j.    Multiple combinations of the above alleged prior art references.

The Asserted Claims of the '283 Patent are presumed valid. 35 U.S.C. §282. However, if Defendants can show by clear and convincing evidence that the claimed invention would have been obvious before the effective filing date to persons having ordinary skill in the art in the field to which the claimed invention pertains, then they may challenge the validity of the Asserted Claims are obvious under 35 U.S.C. §103; *Buildex, Inc. v. Kason Industries, Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988). In determining whether a claimed invention is obvious, the jury must consider the level of ordinary skill in the field of the invention that someone would have had before the effective filing date of the claimed invention, the scope and content of the prior art, and any differences between the prior art and the claimed invention. *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007). In considering whether a claimed invention is obvious, the jury may, but is not required to, find obviousness if it finds that before the effective filing date of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified,

predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find the invention rendered obvious, the jury must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies. *Id.* at 419-420.

In determining whether the claimed invention was obvious, the jury considers each claim separately. It does not use hindsight, i.e., considers only what was known before the effective filing date of the invention.

In making these assessments, the jury should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

a.   Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b.   Whether the invention satisfied a long-felt need;

c.   Whether others had tried and failed to make the invention;

d.   Whether others invented the invention at roughly the same time;

e.   Whether others copied the invention;

f.   Whether there were changes or related technologies or market needs contemporaneous with the invention;

g.   Whether the invention achieved unexpected results;

h.   Whether others in the field praised the invention;

i.   Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.   Whether others sought or obtained rights to the patent from the patent holder; and

k.   Whether the inventor proceeded contrary to accepted wisdom in the field.

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).

### 2. Key Evidence in Opposition to Defendants' Counterclaim 2 and Third Affirmative Defense

Spigen's evidence in opposition to Defendants' claims of invalidity are summarized below and are explained in more detail in the expert reports, expert rebuttal reports, and depositions of its technical expert, Matthew I. Stein, P.E., Spigen's Motion  for Summary Judgment, Spigen's Opposition to Defendants' Ispeaker and Verus's Motion for Summary Judgment, each of which is incorporated by reference.   Specifically, Defendants cannot meet their burden of proof by clear or convincing evidence (or any evidence for that matter) that the Asserted Claims are obvious under 35 U.S.C. §103.

Spigen will present evidence at trial including documents and testimony concerning the alleged prior art references, the level of ordinary skill in the art, and secondary considerations.  Spigen will introduce the testimony and documentary evidence, including the testimony of Matthew I. Stein, P.E., explaining why the prior art references or any combination thereof of the prior art references do not render the Asserted Claims of the '283 Patent obvious.  Mr. Stein will also testify to the secondary considerations including but not limited to commercial success, long felt need, and unexpected results.

Spigen will also present evidence at trial including documents and testimony which will demonstrate that many of the alleged prior art references are not prior art.  The evidence will demonstrate that the Incipio Case, the Otterbox Wallet, and other alleged prior art references are not prior art references.

### C. Counterclaim 3 and Eighth Affirmative Defense:  The '283 Patent is Unenforceable Because of Inequitable Conduct in Front of the USPTO

#### 1. Elements of Inequitable Conduct

1      To prevail on its Counterclaim 3 and Eighth Affirmative Defense of
2  unenforceability of the Asserted Claims based upon inequitable conduct by
3  Spigen, Defendants must ***separately*** prove, by clear and convincing evidence,
4  intent to deceive and materiality of the undisclosed prior art. *Therasense, Inc. v.*
5  *Becton, Dickinson & Co.,* 649 F.3d 1276, 1290 (Fed.Cir.2011). Specifically, that
6  the undisclosed prior art was but-for material to the patentability. *Id.* at 1291.
7  Meaning that the "[USPTO] would not have allowed the claim had it been aware
8  of the undisclosed prior art." *Id.*
9      In addition to independently proving that the withheld information was *but-*
10 *for material*, "[d]efendant must prove by clear and convincing *evidence* that
11 Plaintiff or Plaintiff's counsel withheld material information with intent to deceive
12 the USPTO." *Taltech Limited v. Esquel Enterprises Limited*, 604 F.3d 1324, 1328
13 (Fed. Cir. 2010). Intent to deceive is established if "the accused infringer [can]
14 prove by clear and convincing evidence that the applicant knew of the reference,
15 knew that it was material, and made a deliberate decision to withhold it."
16 *Therasense*. 649 at 1290. "'Because direct evidence of deceptive intent is rare, a
17 district court may infer intent from indirect and circumstantial evidence,' provided
18 that such intent is the single reasonable inference" able to be drawn from the
19 evidence. *Therasense,* 649 F.3d at 1290–91; *Star Scientific v. R.J. Reynolds*
20 *Tobacco Co.*, 537 F.3d 1357, 1364 (Fed. Cir. 2008); *In re Rosuvastatin Calcium*
21 *Patent Litigation*, 703 F.3d 511, 520 (Fed. Cir. 2013). For example, "[s]electively
22 withholding material information is indicative of an intent to deceive for the
23 purposes of inequitable conduct," *TVIIM, LLC. V. McAfee, Inc.*, 2015 WL
24 3966313 at *9 (N.D. Cal. 2015). However, Defendant must demonstrate that the
25 "accused infringer" intentionally withheld evidence that it knew was material.
26     "Materiality and intent must be separately established." *Therasense*. 649
27 F.3d at 519. An applicant's knowledge of a reference's materiality, however,
28 cannot by itself prove, let alone clearly and convincingly prove, that any

subsequent non-disclosure was based on a deliberate decision. *1ˢᵗ Media LLC v. Electronic Arts, Inc.*, 694 F.3d 1367, 1375 (Fed. Cir. 2012). Thus, the Court must not use a sliding scale to determine if there had been inequitable conduct where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa. Moreover, a district court may not infer intent solely from materiality. Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality. Proving that the applicant knew of the reference, should have known of its materiality, and decided not to submit it to the USPTO does not prove specific intent to deceive. *See Star Scientific*. 537 F.3d at 1366 ("the fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct").

### 2.   Key Evidence in Opposition of Defendants' Counterclaim 3 and Eighth Affirmative Defense

Spigen's evidence in opposition to Defendants' claims of inequitable conduct are summarized below and are explained in more detail in the expert reports, expert rebuttal reports, and depositions of its technical expert, Matthew I. Stein, P.E., Spigen's Motion for Summary Judgment, Spigen's Opposition to Defendants' Motion for Summary Judgment, Spigen's Opposition to Defendants' Rule 11 Motion, each of which is incorporated by reference. Specifically, Defendants cannot meet their burden of proof by clear or convincing evidence (or any evidence for that matter) that Spigen committed inequitable conduct in front of the USPTO.

Spigen will present evidence at trial including documents and testimony concerning the alleged prior art references that Spigen allegedly should have disclosed to the USPTO when applying for the '283 Patent. Spigen will introduce the testimony and documentary evidence, including the testimony of Matthew I. Stein, P.E., explaining why any of the prior art references were not material to the patentability of the '283 Patent. Further, Defendants have failed to introduce any

evidence or demonstrate that the USPTO would not have allowed the Asserted Claims had they been aware of the alleged prior art references.  Specifically, Defendants failed to introduce any evidence that Spigen intended to deceive the USPTO or that the alleged prior art references were material.  Finally, Spigen will present evidence at trial including documents and testimony that demonstrate that it did not selectively withhold any material evidence from the USPTO.

### D.    First Affirmative Defense for Failure to State a Claim

Defendants have withdrawn this affirmative defense.

### E.    Fourth Affirmative Defense for Failure to Mark

#### 1.    Elements of Patent Marking

Pursuant to 35 U.S.C. §287(a), a patentee must either mark a patented product or provide actual notice of the infringement in order to recover damages. This section can be satisfied either by constructive notice, accomplished by marking a product or packaging with the applicable patent number, or actual notice, such as sending a cease and desist letter or providing the alleged infringer with actual notice of the infringement through another affirmative act.

#### 2.    Key Evidence in Opposition to Fourth Affirmative Defense for Failure to Mark

Spigen will introduce testimony and documentary evidence demonstrating the patent marking date.  Further, Spigen will produce documentary evidence demonstrating the date that it sent a cease and desist letter to Defendants.

### F.    Fifth Affirmative Defense for Limitations on Damages and Costs based on 35 U.S.C. 287 and 35 U.S.C. 288

Defendants have withdrawn the portion of this affirmative defense for limitation of damages 35 U.S.C. §286

**1.**   **Elements of Limitation of Damages and Costs**

Pursuant to 35 U.S.C. §287, damages for infringement may be limited to the date of marking or date that Defendants received actual or constructive notice of the infringement.  Pursuant to 35 U.S.C. §288, patentee may not recover costs unless it provides a disclaimer that the invalid claim has been entered at the USPTO before the commencement of the suit.

**2.**   **Key Evidence in Opposition to Fifth Affirmative Defense for Limitation on Damages and Costs**

Spigen will introduce testimony and documentary evidence demonstrating the patent marking date.  Further, Spigen will produce documentary evidence demonstrating the date that it sent a cease and desist letter to Defendants.

Defendants have not produced any evidence that any of the claim in the '283 Patent were invalid.  Spigen will also introduce documentary evidence demonstrating that the claims in the '283 Patent are valid.

**G.**   **Sixth Affirmative Defense for Estoppel, Acquiescence, and Waiver**

Defendants have withdrawn this affirmative defense.

**H.**   **Seventh Affirmative Defense Based Upon Later Discovered Evidence**

Defendants have not introduced any new affirmative defenses based upon later discovered evidence.

**III.**   **ANTICIPATED EVIDENTIARY ISSUES**

**A.**   **Motions in Limine**

Spigen will likely file one or more motions *in limine*, including one or more *Daubert* motions.

### 1. Spigen's Proposed Motions in *Limine*

- Spigen will likely request an order to bifurcate the trial and exclude evidence of inequitable conduct and permanent injunction from the jury.

- Spigen will likely request an order barring Defendants from presenting any evidence or argument at trial concerning obviousness arguments regarding patents, patent applications, or other publications that were not published or do not have an effective priority date prior to June 16, 2014.

- Spigen will likely request an order barring Defendants from presenting any evidence or argument at trial concerning obviousness arguments regarding products that were not in the market prior to June 16, 2014.

- Spigen will likely request an order barring sales data information on the Accused Products that was not produced in discovery.

- Spigen will likely request an order barring Defendants from introducing or presenting any evidence or argument based on information that was requested by Spigen in discovery but not properly disclosed.

- Spigen will likely request an order barring Defendants from introducing or presenting any documents or evidence that was not properly disclosed in discovery or was not relied on by their technical expert Oliver Seil in preparing for his expert report or deposition.

- Spigen will likely request an order barring Defendants from presenting any evidence or argument concerning expert or lay opinions from any of Defendants' employees that were not

properly disclosed.

- Spigen will likely request an order barring Defendants from introducing or presenting any evidence or argument on or relating to the Incipio Stowaway credit card case and the Otterbox Commuter case.

- Spigen will likely request an order barring Defendants' expert, Oliver Seil, from providing any evidence or testimony on the subject of inequitable conduct.

- Spigen will likely request an order barring Defendants from presenting any evidence or argument concerning development documents relating to Defendants' Damda Slide and Accused Products.

- Spigen will likely request an order barring Defendants from presenting any evidence or argument concerning any invalidity charts prepared for and presented with Defendants' Motion for Summary Judgment.

- Spigen will likely request an order barring Defendants from presenting any videos regarding the patent process.

- Spigen will likely request an order barring Defendants from presenting any evidence or argument concerning infringing products or misrepresenting diagrams that show no grooves.

### 2. Defendants' Potential Motions *in Limine*

To date, Defendants have not provided Spigen with a list of potential Motions *in Limine*. However, based upon discussions with Defendants' Counsel, Spigen anticipates that Defendants will likely bring the following Motions *in Limine*:

- Defendants will likely request an order barring Spigen from introducing evidence of patents, patent applications, and other

evidence that it alleges was provided to them after the discovery cut-off date.

## IV. ISSUES OF LAW

### A. Claim Construction

The Court has construed the following claim terms:

| Claim Term | Court's Claim Construction |
|---|---|
| Grooves | any long and narrow channel, hollow, cut, or indentation in a surface. |
| sliding means | rails in a cover that slide along grooves formed in the hard protective frame of a case. |

The Court has indicated that the other claims would be interpreted based upon the plain and ordinary meaning of the claim terms. Spigen presents the following chart to assist the Court in defining the plain and ordinary meaning of the claims in the '283 Patent as follows:

Frame: an underlying structure that gives shape or strength, or an open case or structure made for admitting, enclosing, or supporting something (Defendants' expert, Oliver Seil, agreed the Accused Products have a frame.);

raised wall … to form the storage compartment: a wall extending from a surface and forming an enclosed wall in order to form an enclosed side wall of a storage compartment (Defendants' expert, Oliver Seil, agreed the Accused Products have a raised wall to form a storage compartment.);

outer side of the raised wall: the exterior side of the raised wall, being opposite side of the interior side and the interior side being walls that face each other;

the hard protective frame has a protuberance … to structurally support and

reinforce the indentation structure of the hard protective frame: an extended portion of the hard protective frame to structurally support and strengthen the indentation structure of the hard protective frame (Defendants' expert, Oliver Seil, agreed the Accused Products have a hard protective frame that has a protuberance that structurally supports the indentation structure of the hard protective frame.);

aperture to form the storage compartment: an opening which forms the perimeter or outline of the storage compartment; and

Surround: encircle on all sides, but not necessarily in contact with any side or "to encircle" (Defendants' expert, Oliver Seil, agreed the Accused Products have an aperture that surrounds the raised wall.).

The definitions of the claim terms above are based upon the patent and file history, the ordinary and customary meaning of the terms, the use of the terms by persons of the ordinary skill in the art, and by the dictionary definitions of the terms.

## V.   **BIFURCATION**

Spigen requests that the trial be bifurcated with issues of infringement, obviousness and damages tried by a jury, while equitable issues of inequitable conduct and injunctive relief to be tried by the Court, outside the presence of the jury.  "The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000) (citing *Paragon Podiatry Lab. Inc. v. KLM Labs.*, Inc., 984 F.2d 1182, 1190 (Fed.Cir.1993); *see also Gardco Mfg. Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1211–13, (Fed.Cir.1987)).  Moreover, even where a patent case involves issues of fact triable by a jury, courts have often avoided contaminating the jury with testimony on inequitable conduct. *See, e.g., Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 2004 WL 2260626 (N.D. Ill. Oct. 1, 2004) (requiring that expert testimony on inequitable conduct be heard by the court outside the presence of the jury); *Interactive Health LLC v. King Kong USA, Inc.*,

2008 WL 8793640 (C.D. Cal. July 24, 2008) (agreeing to "bifurcate the issue of inequitable conduct such that evidence relevant solely to that issue is heard only by the court, on the grounds that presenting such evidence to the jury is potentially prejudicial and would simplify issues for the jury"). Additionally, injunctive relief is an issue of law for the Court and not for the jury. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

## VI.  JURY TRIAL

Spigen has invoked its right to a jury trial. The issues of infringement, invalidity, and damages should be tried to the jury.

## VII.  ATTORNEYS' FEES

Attorneys fees and costs are awardable under 35 U.S.C. §285, based on the willful infringement of the '283 Patent by Defendants as discussed in Section I(D).

Spigen seeks reasonable attorneys' fees based upon willful infringement of the '283 Patent by Defendants as discussed in Section I(D).

## VIII.  ABANDONMENT OF ISSUES

Spigen has abandoned its infringement claims for Claim 7, 9, 21 of the '283 Patent. No other pleaded claims or defenses have been abandoned by Spigen.

Dated: July 25, 2016                    EAST WEST LAW GROUP

By:   /s/ heedong chae_____
            Michael Hewitt, Esq.
            Heedong Chae, Esq.
            Richard Kim, Esq.
            Attorneys for Plaintiff,
            SPIGEN KOREA CO., LTD.