**JOHN K. PARK, ESQ. (SBN 175212)**
**MARK L. SUTTON, ESQ. (SBN 120255)**
**park@parklaw.com**
 **3255 Wilshire Blvd., Suite 1110**
**Los Angeles, California 90010**
**Telephone: (213) 389-3777**
**Facsimile: (213) 389-3377**
Attorneys for Defendant,
ISPEAK[ER] CO., LTD
VERUS U.S.A., LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPIGEN KOREA CO., LTD, a Republic of Korea corporation,<br><br>    Plaintiff<br><br>    v.<br><br>ISPEAK CO., LTD., a Republic of Korea corporation; VERUS U.S.A., LLC, a California limited liability company ; and DOES 1 through 10, inclusive,<br><br>    Defendants<br>―――――――――――――――――<br>VERUS U.S.A., LLC, a California limited liability company,<br><br>    Counter-Plaintiff<br><br>    v.<br><br>SPIGEN KOREA CO., LTD, a Republic of Korea corporation,<br><br>    Counter-Defendant | CASE NO.: 8:15-CV-01050 DOC (DFMx)<br><br>DEFENDANTS ISPEAK[ER] AND VERUS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW<br><br>The Honorable David O. Carter<br><br>Dept:    9D<br>Location: 411 W. Fourth St.<br>           Santa Ana, CA 92701<br><br>Trial Date: September 6, 2016 at 08:30 a.m. |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.    DEFENSES AND COUNTERCLAIMS ................................ 1

       A. NON-INFRINGEMENT ............................................... 1

       B. INVALIDITY – OBVIOUSNESS ................................... 2

       C. UNENFORCEABILITY-INEQUITABLE CONDUCT ........... 4

       D. LIMITATIONS ON DAMANGES – FAILURE OF PATENT

          MARKING…………………………………………………. 5

III.   CONTENTIONS OF LAW …………................................ 6

       A. THE LAW OF NON-INFRINGEMENT …......................... 6

       B. LAW OF INVALIDITY UNDER 35 U.S.C. §103 (OBVIOUSNESS) … 8

       C. LAW OF INDEFINITENESS UNDER 35 U.S.C. §112(b) …………. 11

       D. LAW OF INEQUITABLE CONDUCT…………………………12

       E. LAW OF LIMITATIONS ON DAMAGES ………………… 13

IV.    CONTENTIONS OF FACT ………………................... 13

       A. SUMMARY OF FACTS RE NON-INFRINGEMENT .......................... 13

       B. SUMMARY OF FACTS RE OBVIOUSNESS ………...................... 15

       C. SUMMARY OF FACTS RE INDEFINITENESS ………................... 19

       D. SUMMARY OF FACTS RE INEQUITABLE CONDUCT ………....... 19

       E. SUMMARY OF FACTS RE LIMITATIONS ON DAMAGES ….......... 20

V.     BIFURCATION OF ISSUES AND JURY TRIAL ....................... 20

VI.    ATTORNEYS' FEES ......................................................... 21

VII.   ABANDONMENT OF ISSUES ........................................... 21

VIII.  CONCLUSION ................................................................. 21

1

## <u>TABLE OF AUTHORITIES</u>

2

3 **Cases**            **Page**

4 *Acco Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361 (Fed. Cir. 2016) ………….. 11

5 *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.,*

6      261 F.3d 1329 (Fed. Cir. 2001) ....................................................... 2, 6

7 *AKZO Nobel Coatings, Inc. v. DOW Chemical Co.,* 811 F.3d 1334

8      (Fed. Cir. 2016) ............................................................................ 2, 7

9 *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012) ….. 13

10 *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003,

11      1006-08 (Fed. Cir. 2012) ………………………………………………… 8

12 *Dome Patent L.P. v. Lee*, 799 F.3d 1372, 1378 (Fed. Cir. 2015) ………………… 8

13 *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1357 (Fed. Cir. 2006) …….. 4, 20

14 *Freedman Seating Co. v. Am. Seating Co.,* 420 F.3d 1350 (Fed. Cir. 2005) ........... 6

15 *Funai Electric Co. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1373-74 ……... 13

16 *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605 (1950) ........... 2, 7

17 *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*,

18      340 U.S. 147, 152 (1950) …………………………………………………… 9

19 *In re Icon Health and Fitness, Inc.*, 496 F.3d 1374 (Fed. Cir. 2007) …………….. 9

20 *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1359 (Fed. Cir. 2000) …….. 7

21 *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S. Ct. 1727 (2007) …………..… 9

22 *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157 (Fed. Cir. 2007) .. 10

23 *Microsoft Corp. v. GeoTag, Inc.,* --- F.3d ---, 2016 WL 1274394

24      (Fed. Cir. 2016) ............................................................................ 2, 7

25 *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1169 (Fed. Cir. 2015) ……. 8

26 *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) ………………. 12

27 *Octane Fitness LLC v. Icon Health Fitness Inc.*, 134 S. Ct. 1749, 1758 (2014) …. 21

28

*Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1311-12

    (Fed. Cir. 2006) …………………………………………………….. 11

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .......................................... 6

*Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013) …………….…………. 10, 11

*Revolution Eyewear, MC v. Aspex Eyewear, Inc.,* 563 F.3d 1358

    (Fed. Cir. 2009) ........................................................................................... 2, 7

*Ring & Pinion Service Inc. v. ARB Corp.,* 743 F.3d 831 (Fed. Cir. 2014) ........... 2, 7

*Taltech Limited v. Esquel Enterprises Limited*, 604 F.3d 1324, 1328

    (Fed. Cir. 2010) ………………………………………………………….. 12

*Terlep v. Brinkman Corp.,* 418 F.3d 1379 (Fed. Cir. 2005) .................................. 2, 7

*Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011)

    (*en banc*) …………………………………………………….. 4, 5, 12, 13

*Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1062-63 (Fed. Cir. 2016) ………….. 8

*Trustees of Columbia University v. Symantec Corp.*, 811 F.3d 1359, 1362-63

    (Fed. Cir. 2016) ……………………………………………………………… 8

*Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9

    (Fed. Cir. 1989) ………………………………………………………... 7

**Statutes**                                                                                                       **Page**

28 U.S.C. § 1927 ………………………………………………………… 21

35 U.S.C. § 103 .............................................................................. 2, 3, 8, 9, 11, 21

35 U.S.C. § 112(b) .................................................................................... 11

35 U.S.C. 271 …………………………………………………………………… 1

35 U.S.C § 285 …………………………………………………………… 21

35 U.S.C. 287 …………………………………………………………………. 20

35 U.S.C. 287(a) …………………………………………………….. 1, 13

37 C.F.R. § 1.56 ………………………………………………………… 12

**AIPLA Jury Instructions**                                                      **Page**

AIPLA Jury Instructions, at 41 …………………………………………….. 2

AIPLA Jury Instructions, at 42 …………………………………………….. 4

AIPLA Jury Instructions, at 41-46 ………………………………………… 3

AIPLA Jury Instructions, at 45-46 ………………………………………… 4

AIPLA Jury Instructions, at 49 ………………………………… 4, 20, 21

AIPLA Jury Instructions, at 50 …………………………………………….. 4

AIPLA Jury Instructions, at 53 …………………………………………….. 5

AIPLA Jury Instructions, at 54 ……………………………………….. 5, 6

## I.      **<u>INTRODUCTION</u>**

In this case, the sole cause of action of Plaintiff Spigen Korea Co., LTD ("Plaintiff" or "Spigen") is that U.S. Patent No. 9,049,283 ("Spigen 283") is infringed by Defendants Verus U.S.A., LLC ("Verus") and ISpeak[er] Co., LTD. ("ISpeak") (Verus and ISpeak are collectively referred to herein as "Defendants").

Defendants' defenses and/or counter claims in this case relate to:

(i) non-infringement of Spigen 283 in view of 35 U.S.C. 271 (Plaintiff bears the burden of proof by a preponderance of the evidence);

(ii) invalidity of all claims of Spigen 283 in view of the obviousness of the claimed invention under 35 U.S.C. 103 (Defendants bear the burden of proof by clear and convincing evidence);

(iii)      unenforceability of Spigen 283 in view of Plaintiff's inequitable conduct during the prosecution of Spigen 283 in withholding prior art from the U.S. Patent and Trademark Office (Defendants bear the burden of proof by clear and convincing evidence overall, and by a preponderance of the evidence on the issue of whether the U.S. Patent and Trademark Office would have issued the patent "but for" the Plaintiff's failure to disclose); and

(iv)      limitations on damages for Plaintiff's failure to appropriately mark its products with the Spigen 283 patent number, or to otherwise give notice of its patent rights to Defendants, under 35 U.S.C. 287(a) (Plaintiff bears the burden of proof by a preponderance of the evidence as to when it first gave Defendants notice of patent infringement).

## II.      **<u>DEFENSES AND COUNTERCLAIMS</u>**

### A. NON-INFRINGEMENT

Defendants have both an affirmative defense (Second Affirmative Defense) and a counter-claim (First Counterclaim) for non-infringement of Spigen 283.

To establish infringement, Plaintiff must prove by a preponderance of evidence that Defendants' accused products infringe Spigen 283 either literally or under the

doctrine of equivalents. *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 262 F.3d 1329, 1336 (Fed. Cir. 2001). Establishing literal infringement requires that every word of at least one valid/enforceable claim of Spigen 283 is met by Defendants' accused devices. *Microsoft Corp. v. Geo Tag, Inc.*, _ F.3d _, 2016 WL 1274394 at *6 (Fed. Cir. 2016); *Revolution Eyewear, MC v. Aspex Eyewear, Inc.*, 563 F.3d. 1358, 1369 (Fed. Cir. 2009); *Terlep v. Brinkman Corp.*, 418 F.3d 1379, 1381 (Fed. Cir. 2005).

If there is no literal infringement, establishing doctrine of equivalents infringement requires that any difference[s] between the accused devices and the patent claim are "insubstantial," meaning that each different element provides substantially the same function in substantially the same way to achieve substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950); *Ring & Pinion Service Inc. v. ARB Corp.*, 743 F.3d 831, 835 (Fed. Cir. 2014). If any of the function, way or result are not substantially the same, there is no infringement and so Defendants prevail in this action. *See AKZO Nobel Coatings, Inc. v. DOW Chemical Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016).

The foregoing principles of patent infringement can also be found in "AIPLA's [American Intellectual Property Association's] Model Patent Jury Instructions" ("AIPLA Jury Instructions") found on the internet under the foregoing title, at page 10 *et seq*.

## B. INVALIDITY-OBVIOUSNESS

Defendants have both an affirmative defense (Third Affirmative Defense) and a counterclaim (Second Counterclaim) for invalidity due to obviousness under 35 U.S.C. 103.

A claimed invention is "obvious" and thus invalid if it would have been obvious to a person of ordinary skill in the art of the claimed invention at the time the invention was made. 35 U.S.C. 103; AIPLA Jury Instructions, at 41.

The following factors must be evaluated to determine whether obviousness of the claimed invention under 35 U.S.C. 103 has been established:

1. the scope and content of the prior art relied upon by Defendants;

2. the difference or differences, if any, between (i) each claim of Spigen 283 that Defendants contend is obvious and (ii) the prior art;

3. the level of ordinary skill in the art at the time the invention claimed in Spigen 283 was made; and

4. additional "secondary" considerations, if any, that indicate that the invention was obvious or not obvious. *See* AIPLA Jury Instructions, at 41-46. "Secondary considerations" for determining either obviousness or non-obviousness include the following issues:

1. Were products covered by the claim commercially successful due to the merits of the invention in Spigen 283 as claimed in Spigen claims 1 through 22 ("claimed invention"), rather than due to advertising, promotion, salesmanship, or features of the product other than those found in a claim of Spigen 283?

2. Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the claimed invention?

5. Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6. Did others in the field, or Defendants, praise the claimed invention or express surprise at the making of the claimed invention?

7. Did others accept licenses under Spigen 283 because of the merits of the claimed invention?

1   Answering all, or some, of these questions "yes" may suggest that the claim was

2   not obvious. Answering all, or some, of these questions "no" may suggest that the

3   claims would have been obvious.

4   These factors are relevant only if there is a connection, or nexus, between the

5   factor and the invention covered by the patent claims.  AIPLA Jury Instructions, at

6   45-46.

7   Obviousness must be proven by Defendants by clear and convincing evidence.

8   AIPLA Jury Instructions, at 42.

9   ### C. UNENFORCEABILITY-INEQUITABLE CONDUCT

10   Defendants have both an affirmative defense (Eighth Affirmative Defense) and a

11   counterclaim (Third Counterclaim) concerning inequitable conduct in obtaining the

12   patent in suit, Spigen 283.

13   Whether the owner of Spigen 283 engaged in inequitable conduct is an issue for

14   the Court to decide.  *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1357 (Fed.

15   Cir. 2006).  The Court may request an advisory verdict from the jury but the Court

16   must make the ultimate decision regarding inequitable conduct.   AIPLA Jury

17   Instructions, at 49.

18   Applicants for a patent have a duty to prosecute patent applications in the Patent

19   and Trademark Office with candor and good faith. This duty of candor and good

20   faith extends to all inventors named on a patent application, all patent attorneys and

21   patent agents involved in preparing and prosecuting the application, and every other

22   individual involved in a substantial way with the prosecution of the patent

23   application. An intentional failure to meet this duty of candor and good faith is

24   referred to as "inequitable conduct."   AIPLA Jury Instructions, at 50; *see also*

25   *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en*

26   *banc*).

27   To determine whether Spigen 283 was obtained through inequitable conduct, the

28   Court must determine:

1. Whether an individual or individuals having this duty of candor and good faith [engaged in affirmative acts of egregious misconduct or] withheld or misrepresented information, or submitted false information, that was material to the examination of the patent application; and

2. Whether the individual or individuals acted with the specific intent to deceive or mislead the Patent and Trademark Office.  AIPLA Jury Instructions, at 50; *see also Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*).

### D. LIMITATIONS ON DAMAGES-FAILURE OF PATENT MARKING

Defendants have two affirmative defenses that relate to the failure of patent marking (Fourth and Fifth Affirmative Defenses).  There is no counterclaim related to that issue.

The date that Plaintiff first notified Defendants of its claim for patent infringement is the date for the start of damages. When the parties do not agree on that date, it is up to you to the jury to determine what that date is. Plaintiff must prove that it is more likely than not that Defendants actually were notified of the claim for patent infringement as of the date alleged by Plaintiff.  AIPLA Jury Instructions, at 53.

Plaintiff could have given the required notice in two ways. The first way is to give notice to the public in general. Plaintiff could have done this by marking substantially all of the products that it sold which included the patented invention, or including on the labeling of substantially all of the products, the word "patent" or the abbreviation "PAT" with the patent number of Spigen 283.  AIPLA Jury Instructions, at 54.

Plaintiff could also have given the first type of public notice by marking substantially all of the products with "Patent" or "Pat" and a free internet address where there is a posting that connects the product with the patent number of Spigen 283. Any licensees of Spigen 283 who use the patented invention must also mark

substantially all of their products that include the patented invention with the patent number. This type of notice starts from the date the Plaintiff and any licensees began to mark substantially all of their products that used the patented invention with the patent number. If Plaintiff and any licensees did not mark substantially all of those products with the patent number, then Plaintiff did not provide notice in this way. AIPLA Jury Instructions, at 54.

A second way Plaintiff could have given notice of its patent is to notify Defendants directly with a specific claim that the accused products infringed Spigen 283. This type of notice starts from the date Defendants received the notice. If you find that Plaintiff, before filing this lawsuit, did not properly mark its products and did not notify Defendant with a specific charge that the accused products, then Plaintiff can only recover damages for infringement that occurred after it sued Defendants on [lawsuit filing date].  AIPLA Jury Instructions, at 54.

## III.   CONTENTS OF LAW

### A.    THE LAW OF NON-INFRINGEMENT

1.  Plaintiff Spigen bears the burden of proving infringement by a preponderance of the evidence.  *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 262 F.3d 1329, 1336 (Fed. Cir. 2001).

2.  Determining whether Defendants' cell phone holders infringe Spigen 283 requires a two step analysis:  First**,** disputed terms in the asserted patent claims should be construed to determine their scope and meaning.  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356 (Fed. Cir. 2005).

3.  Proper claim construction analysis begins by considering the language of the claims themselves.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*).  Claims should be given their ordinary and customary meaning consistent with the specification and prosecution history, as that meaning would have been understood by a person of ordinary skill in the art at the time of the invention.  *Id.*at 1312-1313, 1315, 1317.

4.  The second step of infringement analysis is to compare the properly construed claims to Defendants' accused products so as to determine whether there is infringement.  *Terlep v. Brinkman Corp.*, 418 F.3d 1379, 1381 (Fed. Cir. 2005).

5.  If a single element of an asserted claim is absent from Defendants' accused products, both literally and under the doctrine of equivalents, there is no infringement.  *Id.* at 1385.

6.  There is <u>literal infringement</u> only if every word of the claim at issue reads on the accused product(s).  *Microsoft Corp. v. Geo Tag, Inc.*, _ F.3d _, 2016 WL 1274394 at *6 (Fed. Cir. 2016); *Revolution Eyewear, MC v. Aspex Eyewear, Inc.*, 563 F.3d. 1358, 1369 (Fed. Cir. 2009).

7.  Alternatively, if an element or elements of the claim are not literally found in the accused product, there can be <u>infringement under the doctrine of equivalents</u> if the differences between the claimed invention and the accused product are "insubstantial."  *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1359 (Fed. Cir. 2000).

8.  The differences are "insubstantial" if each element of the accused product performs substantially the same function in substantially the same way to achieve substantially the same result, as the claimed invention.  *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950); *see also Ring & Pinion Service Inc. v. ARB Corp.*, 743 F.3d 831, 835 (Fed. Cir. 2014).

9.  On the other hand, if one or more of the three function-way-result elements is missing from the accused product(s) for any claim element, there is no doctrine of equivalents infringement and thus no patent infringement.  *See AKZO Nobel Coatings, Inc. v. DOW Chemical Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016).

10.  If an independent claim is not infringed, then all claims that depend from that independent claim are not infringed.  *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

11.  By statute, "means-plus-function" language in a patent claim term "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112(f) (emphasis added); *see also MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1169 (Fed. Cir. 2015).

12.  When the specification of a patent, including the claims, does not define particular claim language explicitly or impliedly, extrinsic evidence regarding the meaning of that claim language may be considered; dictionary definitions of a claim term are appropriately used by the courts for that purpose.  *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1062-63 (Fed. Cir. 2016); *Trustees of Columbia University v. Symantec Corp.*, 811 F.3d 1359, 1362-63 (Fed. Cir. 2016).

13.  Clear and convincing evidence is required to establish willful infringement. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1006-08 (Fed. Cir. 2012).

14.  Whether the defendant presented a substantial defense to infringement, including the defense of invalidity or unenforceability, can negate willful infringement.  *Id.*

### B.  LAW OF INVALIDITY UNDER 35 U.S.C. 103 (OBVIOUSNESS)

14.  Defendants bear the burden of proving invalidity by clear and convincing evidence.  *Dome Patent L.P. v. Lee*, 799 F.3d 1372, 1378 (Fed. Cir. 2015).

15.  35 U.S.C. § 103 states as follows:

"A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the **differences between the claimed invention and the prior art** are such that the claimed invention as a whole would have been **obvious** before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made."  [emphasis added]

16.  In 2007, the U.S. Supreme Court issued a decision regarding invalidity under 35 U.S.C. § 103 that changed the way that obviousness under 35 U.S.C. § 103 is analyzed.  In *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S. Ct. 1727 (2007), the U.S. Supreme Court reversed a determination of non-obviousness (under 35 U.S.C. § 103) by the Court of Appeals for the Federal Circuit.

17.  In *KSR*, the Supreme Court reversed the Federal Circuit's then-established obviousness analysis that used a "rigid approach" of the requirement of a "teaching, suggestion or motivation" in the prior art for combining pre-existing elements.  *Id.* at 415.

18.  The *KSR* Court emphasized "the need for caution in granting a patent based on the combination of elements found in the prior art," citing the Supreme Court's prior admonition "that a 'patent for a combination which only unites <u>old elements with no change in their respective functions</u> … obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men." *Id.* at 416 (citing *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152 (1950)) (emphasis added).

19.  The *KSR* Court determined that the foregoing admonition is the "principle reason" that "[the] <u>combination of familiar elements</u> according to known methods is likely to be obvious when it does no more than yield <u>predictable results</u>." *Id.* at 416 (emphasis added).

20.  In concluding its discussion of the legal principles of obviousness, the Supreme Court in *KSR* stated that:

> "When there is a design need … to solve a problem and there are a finite number of <u>identified, predictable solutions</u>, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is <u>likely the product not of innovation but of ordinary skill and common sense</u>."

*Id*, at 421 (emphasis added).

21.  Since the *KSR* decision, the Federal Circuit has repeatedly found obvious combinations of prior art elements that provided the same function in the claimed invention as they did in the prior art.  For example, in *In re Icon Health and Fitness, Inc.*, 496 F.3d 1374 (Fed. Cir. 2007), the invention was a folding treadmill that used a gas spring to hold it in its folded position.  One prior art patent disclosed a folding treadmill and another prior art patent disclosed a gas spring for a folding bed that held the bed in its folded position.  After citing *KSR*, the Federal Circuit held the claimed invention was obvious under 35 U.S.C. § 103 while stating that "[o]ne skilled in the art would naturally look to prior art addressing the same problem at hand, and in this case would find an appropriate solution." *Id.* at 1380.

22.  In *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157 (Fed. Cir. 2007), the invention was an auditory learning device for helping young children to read phonetically.  A prior art patent disclosed an "electro-mechanical" auditory learning toy providing the same operational functions but without the modern electronic elements used in the invention.  *Id.* at 1161.  Another prior art learning toy product with "a slightly different mode of operation" used all but one of the claimed electronic elements, a "reader."  *Id.* at 1161-62.  The "reader" element, however, was found to be "well-known in the art at the time of the invention." *Id.* at 1162.  The Federal Circuit affirmed the district court's finding of obviousness, citing *KSR*'s principle of the likely obviousness of "familiar elements" that "yield predictable results." *Id.* at 1161 and 1163.

23.  *Randall Mfg. v. Rea*, 733 F.3d 1355 (Fed. Cir. 2013) related to an invention for moveable bulkheads for partitioning cargo space designed to be lifted and stowed near the ceilings of shipping containers.  The Federal Circuit vacated the U.S. Patent Office's Patent Trial and Appeal Board's  determination that the invention was non-obvious in view of four prior art references.  The Court overturned the decision below because the Board did not consider extensive background prior art references (beyond the four cited references) showing that a

"prevalent … method of stowing a bulkhead panel was to raise it to the ceiling." *Id.* at 1363.  The Court admonished the Board for ignoring evidence that the design of the claimed invention was "nothing more than the 'combination of familiar elements according to known methods' … [and] 'performing the same function it had been known to perform,' " citing and quoting *KSR*. *Id* (internal quotations omitted).

24. *Acco Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361 (Fed. Cir. 2016) involved an invention for a paper shredder that had a controller, thickness detector and presence detector combination.  The claimed shredder required detection and recordation of the appropriate thickness of the paper and the presence of the paper in the paper feeder, in that order, before the controller turned on the shredder when the appropriate parameters were present.  *Id*, at 1367.  All three elements and their functions were present in the prior art but no prior art device had determined an appropriate thickness of the paper <u>before</u> the presence sensor was allowed to activate the shredder.  *Id*, at 1366-67.  The Federal Circuit reversed the U.S. Patent Trial and Appeal Board's determination that the patent examiner had inappropriately found a prima facie case of obviousness of the claimed invention under 35 U.S.C. § 103, citing *KSR*.  *Id*, at 1367-68.

25. In order for "secondary considerations" such as "commercial success," "unexpected results," "praise and industry acclamations" and "copying by others" to be "significant" evidence of non-obviousness, there must be a "nexus between the claimed invention" and the secondary consideration, such as commercial success. *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006).

26. Also, if a "feature" of the invention is in the prior art and Plaintiff claims that feature results in a "secondary consideration" such as commercial success, the secondary consideration is not relevant to obviousness analysis.  *Id.*

**C.    LAW OF INDEFINITENESS UNDER 35 U.S.C. 112(b)**

27. 35 U.S.C. 112(b) provides:  "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter

which the inventor or a joint inventor regards as the invention."  A violation of this statutory requirement is described as "indefiniteness."

28.  As stated in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."

### D.    LAW OF INEQUITABLE CONDUCT

27.  Inequitable conduct supports an award of attorneys' fees when the patent was obtained from the United States Patent and Trademark Office ("USPTO") in violation of the duty of candor and disclosure imposed on every patentee.  *See Taltech Limited v. Esquel Enterprises Limited*, 604 F.3d 1324, 1328 (Fed. Cir. 2010); *see also* 37 C.F.R. § 1.56.

28.  "Unlike validity defenses, which are claim specific, … inequitable conduct regarding **a single claim** renders the entire patent unenforceable." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (*en banc*) (emphasis added).

29.  "To establish inequitable conduct, the accused infringer must prove by clear and convincing evidence that the patentee withheld **material** information with **intent to deceive** the PTO." *Taltech*, 604 F.3d at 1328 (emphasis added).  In short, the elements of inequitable conduct are materiality and intent to deceive.

30.  "[T]he materiality required to establish inequitable conduct is but-for-materiality.  When an applicant fails to disclose prior art to the PTO, that prior art has but-for-materiality if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense,* 649 F.3d at 1291 (Fed. Cir. 2011).

31.  The materiality prong is to be determined on a preponderance of evidence standard because that is the standard used in the USPTO to determine whether a patent claim should be rejected. *Therasense,* 649 F.3d at 1291-92 ("In assessing the materiality of a withheld reference, the court must determine whether the PTO

would have allowed the claim if it had been aware of the undisclosed reference.  In making that determination, the court should apply the preponderance of the evidence standard ….") (emphasis added); *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324,  1334 (Fed. Cir. 2012) ("[T]he standard for establishing but-for materiality in the inequitable conduct context only requires a preponderance of the evidence") (citing *Therasense*).

32.  The <u>intent to deceive</u> prong, on the other hand, must be satisfied by <u>clear and convincing</u> evidence.  *Therasense,* 649 F.3d at 1290 (emphasis added).

33.  "Because direct evidence of deceptive intent is rare, a district court may infer intent to deceive from indirect and circumstantial evidence."  *Id*, at 1291.

34.  "To meet the clear and convincing evidence standard, intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F.3d at 1291.

### E.   LAW OF LIMITATIONS ON DAMAGES

35.  In order to obtain damages in a patent case, the defendant must be notified of the claim of patent infringement.  35 U.S.C. 287(a); *Funai Electric Co. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1373-74.

36.  Such notice can be given to the public generally by marking substantially all of the products Plaintiff sold, and that included the patented invention, with (i) the word "patent," or the abbreviation "PAT," along with the number of the patent or (ii) the word "patent" or "PAT" along with a free internet address having a posting that connects the product with the patent number.  35 U.S.C. 287(a).

37.  Alternatively, Plaintiff can give the required notice directly to the defendant that the defendant's products allegedly infringe the patent in suit.  *Funai*, at 1373; *see also* 35 U.S.C. 287(a).

### IV.   <u>CONTENTIONS OF FACT</u>

#### A. SUMMARY OF FACTS RE NON-INFRINGEMENT

1. Spigen 283 requires in claims 1 through 15 that an infringing device has "a hard protective frame … wherein the hard protective frame comprises **grooves**" ("grooves limitation").  Spigen 283 at col. 6, lines 65-67 (emphasis added).

2. The Court has construed the term "groove" in the grooves limitation of claim 1 and its dependent claims to mean "any long and narrow channel, hollow, cut, or indentation in a surface."  Court's July 22, 2016 Order at page 10, line 19.

3. In claims 16 through 22, Spigen 283 requires that an infringing device has "a sliding means for sliding a cover forward and backward with respect to the hard protective frame" ("sliding means limitation").  Spigen 283 at col. 8, lines 26-27.

4. The Court has construed the term "sliding means" in claim 16 to mean "rails in a cover that slide along **grooves** formed in the hard protective frame of a case." Court's July 22, 2016 Order at page 11, lines 1-2 (emphasis added).

5. Defendants' accused products in this case do not have "grooves" literally or under the doctrine of equivalents, and therefore do not infringe any claims of Spigen 283.

6. Defendants' accused products in this case do not have "rails in a cover" that "mate with" or are "slidably mounted on" the "grooves" in the "hard protective frame," either literally or under the doctrine of equivalents.  Therefore, the accused products do not infringe claims 1 through 15 and 17 of Spigen 283 for that separate reason.

7. Regarding claims 5 and 20, the claimed "protuberance on an opposite side of the indentation structure of the hard protective frame" is not present in the accused devices and so there is no literal or doctrine of equivalents infringement for an additional reason.  There is also no infringement of the same claims because Plaintiff is contending that the same structures are the "grooves" in claim 1 (upon which claims 5 and 20 depend) and also the "protuberance" in claims 5 and 20.  The "grooves" and the "protuberance" are different claim elements.

8.  Claim 7 is not infringed because the claim requires that "the side walls of the cover are slanted."  The accused devices have only one slanted side wall on the cover, not two, as claimed.  Therefore, claim 7 is also not infringed for that reason.

9.  Claim 12 requires a "cavity" in the "hard protective frame."  There is no such "cavity" or its equivalent in the accused devices and so there is no literal or doctrine of equivalents infringement of claim 12 for that additional reason.

10.  Regarding claim 14, again, Plaintiff is attempting to assert that the alleged "groove" structure (i.e., the step structure in the accused devices) also satisfies a different limitation set forth in claim 14, namely the "long protrusion."  That is improper because the "long protrusion" of claim 14 is a separate element of the clamed device.

11.  Concerning claims 15 and 22, the elements in the accused devices asserted to be a "long protrusion" and a "long recess" are completely different from the claimed and disclosed elements.  There is no literal or doctrine of equivalents infringement.

## B. SUMMARY OF FACTS RE OBVIOUSNESS

12. The prior art items that Defendants are asserting in this case regarding obviousness are as follows:

(a) Korean Registered Utility Model 20-0472435 ("KUM435");

(b) Plaintiff Spigen's "Slim Armor" prior art cell phone carrier ("Spigen-1");

(c) U.S. Patent Publication No. 2012/0067751 to Mongan et al. ("Mongan");

(d) Third party Incipio's "Stowaway Credit Card Case" product ("Incipio").

(e) U.S. Patent No. 8,245,842 to Bau ("Bau");

(f) Third party OtterBox's "Commuter Series Wallet" product ("OtterBox");

(g) DAMDA Cotton case for Galaxy S5 ("DAMDA"); and

(h) DESIGNSKIN for iPhone 5/5S ("DESIGNSKIN-1").

13. The only independent claims of Spigen 283, namely claims 1 and 16, are obvious under KUM435 alone.  The only elements KUM435 does not disclose from claim 1 are "a raised wall formed on a bottom surface of the back panel to form the storage compartment," and only the "removably" element in the claim 1 language, "a hard protective frame configured to removably mount over the soft protective case."  The "raised wall" from the back panel of the soft protective case (instead of from the "hard protective frame," as in KUM435) is a matter of obvious design choice, as is the "removab[ility]" of the hard protective frame from the soft protective case, from the perspective of a person of ordinary skill in the art.  KUM435 in fact discloses two embodiments, one in which the hard protective frame provides the bottom of the card storage compartment and a second in which the soft protective case provides the bottom of the card storage compartment.  It would be obvious to a person of ordinary skill in the art to bring the necessary wall up from the bottom of the soft protective case using the same material as that found in the soft protective case, in the second embodiment disclosed in KUM435.

14. The elements discussed in all of the combinations of prior art discussed below perform the same function in the combination as they do individually.  In addition, the combination fits together and performs functionally as expected by a person of ordinary skill in the art, rendering the claims obvious.

15. Claims 1 and 16 are also obvious in view of KUM435 in view of Spigen-1. Spigen-1 provides the "removab[ility]" feature missing from KUM435, that is a hard protective frame that is removably mounted on a soft protective case.  The result would be the cell phone case of claim 16.  The only other element of claim 1 not found in KUM435 (namely, the "raised wall" element) would be a matter of obvious design choice.

16. Claims 1 and 16 are further obvious in view of KUM435 in view of Spigen-1 and Incipio.  As explained above, KIM435 and Spigen explicitly disclose all of the elements of claim 16 and all elements of claim 1 but the "raised wall" limitation.

Incipio discloses "a raised wall formed on a bottom surface of the back panel to form the storage compartment."

17.  Claims 1 and 16 are obvious in view of KUM435 in view of Incipio.  Incipio discloses both the "removab[ility]" limitation and the "raised wall" limitation (i.e., from a soft protective case holding a cell phone with a hard protective removably mounted on the soft case).

18.  Claims 1 and 16 are obvious in view of KUM435 and further in view of OtterBox and Mongan.  OtterBox discloses, among others disclosed by KUM435, the "removab[ility]" feature.  Mongan discloses the "raised wall" from the floor of a card storage compartment both made of soft material.

19.  Claims 1 and 16 are obvious in view of KUM435 and further in view of Bau and Mongan.  Bau discloses, among others disclosed by KUM435, the "removab[ility]" feature.  Mongan discloses the "raised wall" from the floor of a card storage compartment both made of soft material.

20.  Claims 1 and 16 are further obvious in view of KUM435 in view of Spigen-1 and Incipio.  As explained above, KIM435 and Spigen explicitly disclose all of the elements of claim 16 and all elements of claim 1 but the "raised wall" limitation. Mongan discloses "a raised wall formed on a bottom surface of the back panel to form the storage compartment."

21.  Claims 1 and 16 are further obvious in view of KUM435 in view of Damda. Damda discloses the "removab[ility]" feature as well as a "raised wall" from a card storage compartment for which the floor and the wall are made of soft material.

22.  Claims 1 and 16 are further obvious in view of Incipio in view of OtterBox. Incipio discloses all elements of claims 1 and 16, including a cover for a card storage compartment, without the sliding feature for the cover.  Incipio also lacks grooves in the hard protective frame and rails in the cover that slide on the grooves. OtterBox discloses a cover for card storage that slides as well as the grooves and rails limitations.

23. Claims 1 and 16 are obvious in view of KUM435 in view of Mongan. Mongan discloses both the "raised wall" limitation (i.e., from a soft protective case holding a cell phone with a hard protective removably mounted on the soft case).

24.    Claims 1 and 16 are further obvious in view of Incipio in view of Designskin-1.  Incipio discloses all elements of claims 1 and 16, including a cover for a card storage compartment, without the sliding feature for the cover.  Incipio also lacks grooves in the hard protective frame and rails in the cover that slide on the grooves.  Designskin-1 discloses a cover for card storage that slides as well as the grooves and rails limitations.

25.  As for the limitations in the remaining claims, Incipio has all of the additional elements of dependent claims 1 through 5, 8, 14 through 16, 18 through 20 and 22.  For those combinations above not including Incipio, combining those prior art references further in view of Incipio would render obvious to a person of skill in the art the new combination, under the same reasoning used above. Otherwise, the combination for obviousness remains the same.

26.  Regarding dependent claims 1, 6, 11, 16 and 17, OtterBox has all of the additional elements of those claims and, for those combinations above not including OtterBox, combining those prior art references further in view of OtterBox would render obvious to a person of skill in the art the new combination, under the same reasoning used above.

27.  Regarding dependent claims 3 and 19, Spigen-1 has all of the additional elements of those claims and, for those combinations above not including Spigen-1, combining those prior art references further in view of Spigen-1 would render obvious to a person of skill in the art the new combination, under the same reasoning used above.

28.    Regarding dependent claim 10, Damda has all of the additional elements of that claim and, for those combinations above not including Damda, combining those

prior art references further in view of Damda would render obvious to a person of skill in the art the new combination, under the same reasoning used above.

29.  Regarding dependent claims 12 and 13, Designskin-1 has all of the additional elements of those claims and, for those combinations above not including Designskin-1, combining those prior art references further in view of Designskin-1 would render obvious to a person of skill in the art the new combination, under the same reasoning used above.

## C. SUMMARY OF FACTS RE INDEFINITENESS

30. In Spigen 283, the elements claimed to be the "long recess" and the "long protrusion" in claims 15 and 22 are the bottom portions of the extreme left and right sides of the "hard protective frame" and "the soft protective case."

31. Those elements match up without any attachment features in them.  They are described as the "[l]ower side of the indentations 26" (i.e., the "long recess") and "the complementary structures 36" (i.e., the "long protrusion") at col. 4, lines 16-21 of Spigen 283.  These are merely narrow, long overlapping elements with no attachment features (i.e., the hard frame "long recess" at "26" in FIG. 4 overlaps the soft case "long protrusion" at "36" in FIG. 5A).

32. Plaintiff asserts that elements in the accused products that involve the insertion of ridges in a hard frame into slots in a soft case infringe to securely attach the hard frame to the soft case are extremely different features of their products than those claimed and described as the "long recess" and the "long protrusion" in Spigen 283.

33. Defendants assert that Plaintiff's position here is a classic example of using such overbroad claim language that the public would never anticipate that there was infringement if it evaluated Spigen 283 carefully.

## D. SUMMARY OF FACTS RE INEQUITABLE CONDUCT

34. As explained above, KUM435 discloses almost all of the elements of both claim 1 and claim 16 of Spigen 283 and renders both of those claims obvious,

although only one of those claims need be invalid, in view of KUM435, to satisfy the but-for materiality standard for inequitable conduct.  The same is true regarding an obvious combination of KUM '435 with Mongan alone, because Mongan was cited by the examiner during the prosecution of Spigen 283.

35. Spigen was accused in a cease and desist letter of infringing KUM '435 by a third party in Korea before Spigen 283 was being prosecuted in the USPTO. Therefore, not only did Spigen have knowledge of KUM '435, Plaintiff was fully and acutely aware that the KUM '435 reference was likely highly relevant to the subsequently-filed Spigen 283 patent application.

36.  However, Spigen did not disclose KUM435 to the U.S. Patent and Trademark Office during the prosecution of the Spigen 283 application.

37.  Nor did Spigen or its attorney, who prosecuted Spigen 283 and is counsel of record in this action, seek reissue or reexamination of Spigen 283 in the USPTO, even after warning letters from Defendants' counsel about the high degree of relevance of KUM435 to Spigen 283 <u>before</u> this lawsuit was filed.  Instead, Spigen and its counsel brought this lawsuit.

### E. SUMMARY OF FACTS RE LIMITATIONS ON DAMAGES

38.  Plaintiff failed to properly mark its patented products after Spigen 283 issued under either of 35 U.S.C. 287's methods for doing so.

40.  Plaintiff did not do so until after Plaintiff sent Defendants a cease and desist letter accusing Defendants of infringement not long before this case was filed.

41.  Any damages awarded to Plaintiff this action should be reduced accordingly.

### V. <u>BIFURCATION OF ISSUES AND JURY TRIAL</u>

Although inequitable conduct is an issue for the Court to decide, *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1357 (Fed. Cir. 2006), the Court may submit the issue to the jury for an advisory verdict. AIPLA Model Jury Instructions, at 49. Defendants believe and advisory verdict would be appropriate in this case because

the issue is properly raised and there is sufficient evidence to support the defense. *Id.*

Defendants believe a jury trial demand has been made, which would apply to the issues of infringement, invalidity and damages.

## VI. ATTORNEYS' FEES

Defendants' anticipate that they may be seeking attorneys' fees under 35 U.S.C § 285, 28 U.S.C. § 1927, this Court's inherent power. *See, e.g., Octane Fitness LLC v. Icon Health Fitness Inc.*, 134 S. Ct. 1749, 1758 (2014) (lowering the standard for awarding attorneys' fees to defendants in patent infringement cases under 35 U.S.C. § 285) (also stating that "[w]e have long recognized a common-law exception to the general American rule against fee-shifting-an exception, inherent in the power [of] the courts that applies for willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons ….") (citations and quotations omitted).

## VII. ABANDONMENT OF ISSUES

Defendants have abandoned its Affirmative Defenses Nos. I, VI and VII. Defendants have not abandoned any other pleaded claims or defenses.

## VIII. CONCLUSION

For the foregoing reasons, Defendants request that the Court determine that Spigen 283 is not infringed and is invalid under 35 U.S.C. § 103 in its entirety.

PARK LAW FIRM

Dated:  July 25, 2016


By:   /s/ Mark L. Sutton
John K. Park
Mark L. Sutton
Attorneys for Defendant/Counterclaimant
VERUS U.S.A. LLC

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and am not a party to the within action.  My business address is 3255 Wilshire Blvd., Suite 1110, Los Angeles, California  90010.

On July 25, 2016, I caused the foregoing document(s) described as DEFENDANTS ISPEAK[ER] AND VERUS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW to be served on the parties in this action, as follows:

Mr. Heedong Chae, Esq.
EastWest Law Group
3600 Wilshire Blvd., Suite 702
Los Angeles, CA 90010
hdchae@ewpat.com

(      ) (BY PERSONAL DELIVERY)  I am readily familiar with the business practice of my place of employment in respect to personal service.  The foregoing sealed envelope was personally delivered to the above address.

(  **X**  ) (BY U.S. MAIL)  I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondences, pleadings and notices for mailing with United States Postal Service.  The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully paid at Los Angeles, CA, in the ordinary course of business.

(      ) (BY EMAIL)  I served a true and correct copy by email to the email address shown above per prior agreement between the parties.

(  **X**  ) (BY EM/ECF)  It is believed that EM/ECF will automatically generate the court filed version of this document immediately at the time of filing and serve the above named parties.

(  **X**  ) (FEDERAL)  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: _____July 25, 2016_____                    By: __/s/John K. Park_____
                                                                            John K Park